1  Kevin S. Conlogue, SBN 285277
   (Kevin@LOKSC.com)
2  Ashley M. Conlogue, SBN 292083
   (Ashley@LOKSC.com)
3  **CONLOGUE LAW, LLP**
   292 S. La Cienega Blvd., Ste. 207
4  Beverly Hills, CA 90211
   Tel:   (213) 255-8837
5  Fax:   (213) 477-2069

6  Attorney for Plaintiff
   DEBORAH MOLLER

7

8

9                **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12 DEBORAH MOLLER., an              Case No.: 5:22-cv-01306-DSF-MARx
   individual and successor-in-interest
13 of BRET BREUNIG, deceased;       **SECOND AMENDED**
                                    **COMPLAINT FOR DAMAGES**
14         Plaintiff,               **FOR:**

15

16     v.                          1) **Failure to Protect (42 U.S.C. §**
                                       **1983)**
17 COUNTY OF SAN BERNARDINO,        2) **Due Process—Interference**
   a public entity; UNIDENTIFIED       **with Parent/Child**
18 DEPUTIES, individuals; CITY OF      **Relationship (42 U.S.C. §**
   REDLANDS, a public entity;          **1983)**
19 UNIDENTIFIED OFFICERS,          3) **Due Process—State Created**
   individuals; LOMA LINDA            **Danger (42 U.S.C. § 1983)**
20 UNIVERSITY MEDICAL              4) **Due Process – Special**
   CENTER, a non-profit corporation;   **Relationship (42 U.S.C. §**
21 UNIDENTIFIED HEALTH CARE           **1983)**
   PROFESSIONALS, individuals; and 5) ***Monell* Claim (42 U.S.C. §**
22 KENNETH BREUNIG, a nominal         **1983)**
   Defendant,                       6) **Violation of EMTALA (42**
23                                     **U.S.C. § 1395dd)**
           Defendants.             7) **Violation of California Health**
24                                     **and Safety Code § 1317**
                                   8) **Negligence**
25

26

27

28

─────────────────────────────────────────────
              SECOND AMENDED COMPLAINT FOR DAMAGES
                              1

9) **Bane Act Violation (Civil Code § 52.1)**
10) **Violation of California's Public Records Act (Cal. Gov't Code §§ 6250, et seq.)**

**DEMAND FOR JURY TRIAL**

**DECLARATION OF DEBORAH MOLLER**

COMES NOW, Plaintiff, DEBORAH MOLLER, an individual and successor-in-interest of BRET BREUNIG deceased, for her claims against Defendants, COUNTY OF SAN BERNARDINO, a public entity; BREANA FITE, an individual, UNIDENTIFIED DEPUTIES, individuals; UNIDENTIFIED OFFICERS, individuals; LOMA LINDA UNIVERSITY MEDICAL CENTER, a non-profit corporation; and UNIDENTIFIED HEALTH CARE PROFESSIONALS, individuals, and each of them, complains and alleges as follows:

## INTRODUCTION

1.      This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under state law and the United States Constitution in connection with the death of BRET BREUNIG during and after he was taken into custody on or about August 18, 2021, and released while BRET BREUNIG was unable to care for himself, and was a danger to himself and to others.

## PARTIES

2.      At all relevant times, Plaintiff, DEBORAH MOLLER (hereinafter "Plaintiff"), an individual and successor-in-interest of BRET BREUNIG, deceased (hereinafter "Decedent"), is and was a resident of the County of San Bernardino, State of California.  Plaintiff is the natural mother of Decedent.  Decedent died without issue, and thus Plaintiff has the superior right to bring this lawsuit as an individual and

as a successor-in-interest pursuant to California Code of Civil Procedure §§ 377.11, 377.30.

3.    At all times herein relevant, Plaintiff is informed and believes, Defendant COUNTY OF SAN BERNARDINO ("COUNTY"), is and was a duly organized public entity, form unknown, existing under the laws of the State of California.

4.    At all times herein relevant, Defendant BREANA FITE ("FITE") is and was an individual employed as a Sheriff's Deputy with Defendant COUNTY.

5.    At all times herein mentioned, Defendant COUNTY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the San Bernardino Sheriff's Department ("SBSD"), and particularly said Department's Patrol, Internal Investigations and Training, and Personnel Divisions and other operations and subdivisions presently unidentified to Plaintiff, and their tactics methods, practices, customs and usages.

6.    At all times herein relevant, Plaintiff is informed and believes, Defendant LOMA LINDA UNIVERSITY MEDICAL CENTER (hereinafter "LOMA LINDA"), is and was a nonprofit public benefit corporation existing under the laws of the State of California.

7.    The true names of defendants UNIDENTIFIED HEALTH CARE PROFESSIONALS are unknown to Plaintiff, who therefore sues these defendants by such fictitious names as Defendant LOMA LINDA refused to properly identify said deputies as alleged *infra*.  Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the UNIDENTIFIED HEALTH CARE PROFESSIONALS are health-care professionals who are responsible in some manner for the conduct and liabilities alleged herein.

8.    The true names of defendants UNIDENTIFIED DEPUTIES and UNIDENTIFIED OFFICERS are unknown to Plaintiff, who therefore sues these

defendants by such fictitious names as Defendant COUNTY refused to properly identify said deputies as alleged *infra*.  Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.  Each of the UNIDENTIFED DEPUTIES and UNIDENTIFIED OFFICERS are responsible in some manner for the conduct and liabilities alleged herein.

9.      At all relevant times, COUNTY was the employer of Defendants FITE, UNIDENTIFIED DEPUTIES (hereinafter the "Responding Deputies") and UNIDENTIFIED OFFICERS (hereinafter the "Responding Officers"), and said individuals were employees and agents of COUNTY.

10.     At all relevant times, Defendants FITE, Responding Deputies and Responding Officers, and each of them, were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as Peace Officers and with the complete authority and ratification of their principal, Defendant COUNTY, which is additionally liable in respondeat superior pursuant to section 815.2 of the California Government Code for the acts of said Defendants which are alleged herein.

11.     At all times relevant, Defendants FITE, Responding Deputies and Responding Officers, and each of them, were duly appointed officers and/or employees or agents COUNTY, subject to oversight and supervision by COUNTY's elected and non-elected officials.

12.     In doing the acts and failing and omitting to act as hereinafter described, Defendants FITE, Responding Deputies and Responding Officers, and each of them, were acting on the implied and actual permission and consent of COUNTY.

13.     At all times herein relevant, Defendant COUNTY was the employer and/or principal of Defendant FITE and the Responding Deputies and Responding Officers herein, and/or were and are legally responsible for the acts, omissions, and conduct of

FITE and the Responding Deputies and Responding Officers herein, within the meaning of Government Code §§ 815.2(a), 815.4, 820(a), among other provisions, and are liable to Plaintiff by reason thereof.

14.     At all times herein relevant, Defendants FITE, Responding Deputies and Responding Officers, and each of them, were and are legally responsible for their acts, omissions, and conduct that gives rise to this lawsuit, within the meaning of Government Code § 820(a), among other provisions, and are liable to Plaintiff by reason thereof.

15.     Defendants FITE, Responding Deputies, Responding Officers, UNIDENTIFIED HEALTH CARE PROFESSIONALS, and each of them, did the acts and omissions hereinafter alleged willfully, intentionally, maliciously, in bad faith and with knowledge that their conduct violated well established and settled law and constituted a willful and conscious disregard for the rights and safety of Decedent.

16.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

17.     Prior to the commencement of this action, Plaintiff presented a government tort claim with COUNTY in full and timely compliance with the California Tort Claim Act.  Said claim has been expressly denied or denied by operation of law by COUNTY.  Plaintiff has complied with the requirements of the Government Code for the timely filing of formal claims with COUNTY.

18.     At all times herein relevant, nominal Defendant KENNETH BREUNIG, an individual and the father of decedent, is and was a resident in the State of California, and is joined herein as a nominal defendant in accordance with California Code of Civil Procedure section 382.

///

///

**JURISDICTION AND VENUE**

19.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by the U.S. Constitution, the Fourteenth Amendment, and 42 U.S.C. § 1983.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1367.

20.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in County of San Bernardino, State of California.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

21.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs, as though fully set forth herein.

22.     On information and belief, on August 18, 2021, Decedent presented to LOMA LINDA and to UNIDENTIFIED HEALTH CARE PROFESSIONALS seeking emergency medical treatment.  On information and belief, Decedent was then suffering from an acute emergency medical condition requiring emergency medical care, including but not limited to an infection impacting his left foot and leg.  On information and belief, the infection, as well as a prior surgery from which Decedent had not yet recovered, impinged Decedent's ability to ambulate.

23.     On information and belief, Decedent did not receive an appropriate medical screening evaluation under EMTALA or other statutory law, in that it, among other things:

      a.  was not calculated to identify critical medical condition(s);

      b.  did not provide the same level of screening to Decedent that other, substantially similar patients received,

      c.  on information and belief, did not meet LOMA LINDA's internal procedures for a screening examination, and;

   d. did not afford Decedent the processes and remedies that were within the emergency room's capabilities.

24. On information and belief, Decedent was thereafter forcibly removed from LOMA LINDA's property, in that, among other things, LOMA LINDA called for SBSD and Redlands Police Department ("RPD") officers and deputies to remove Decedent from the premises.

25. On information and belief, on or about 11:30 a.m. on August 18, 2021, Defendants FITE, Responding Officers and Responding Deputies arrived at LOMA LINDA and did in fact forcibly remove Decedent from the premises.

26. At or immediately prior to the time Defendants FITE, Responding Officers and Responding Deputies made contact with Decedent, he was visibly impaired, was visibly in need of medical attention, could not take care of himself, and was a danger to his own safety and to the safety of others.

27. Additionally, Responding Officers and Responding Deputies had made contact with Decedent on multiple occasions in the several days prior to August 18, 2021, and were thus aware of the fact that Decedent posed a danger to himself or others by virtue of this prior contact.

28. On information and belief, at the time Defendants FITE, Responding Deputies and/or Responding Officers arrested Decedent, he was not wearing any clothing except for a hospital gown and blanket, and was not wearing any shoes. Decedent also did not have any personal effects, including any money or a cell phone, and was without any medical device such as crutches to help him ambulate, despite the injuries and trauma to his right leg.

29. At or about that same time, Defendants FITE, Responding Deputies and Responding Officers arrested Decedent and drove away with Decedent in custody in Defendant FITE's, Responding Deputies' and/or Officers' patrol vehicle. Defendant FITE's, Responding Deputies' and/or Officers' custodial duties required them to take

Decedent to the station for booking and to maintain Decedent in custody there until he was no longer a danger to his own safety and the safety of others, and/or required them to take Decedent to an appropriate medical facility for medical attention.

30.    Instead of doing so, Defendants FITE, Responding Deputies and/or Responding Officers dropped Decedent off at or near the train crossing at or near the intersection of Alessandro Road and San Timoteo Canyon Road in Redlands, California when he was still visibly unable to care for himself. There are no public services available in and around this area. And, there are no hospitals and/or medical providers in and around this area.

31.    On information and belief, at the time Defendants FITE, Responding Deputies and/or Responding Officers dropped Decedent off at or near the train crossing, a train was approaching or in the process of traversing the train crossing.

32.    On information and belief, almost immediately thereafter, Decedent, while being in a state unable to take care of himself, wandered onto the train crossing where he was struck by the passing train, ultimately leading to Decedent's death.

33.    On August 18, 2021, Defendants FITE, Responding Deputies and/or Responding Officers knew that Decedent was a danger to his own safety and the safety of others, knew that Decedent must be kept in custody until he was no longer a danger, or transferred to an appropriate medical facility, and knew that Decedent would face great bodily harm and death if Decedent was not so treated. Yet in reckless disregard of that knowledge, Defendants FITE, Responding Deputies and/or Responding Officers released Decedent even though a reasonable person in their position(s) would have appreciated the high degree of risk and harm involved. Defendants FITE, Responding Deputies and Responding Officers were deliberately indifferent to the substantial risk of harm that Decedent faced.

34.    Subsequent to Decedent's death, Plaintiff, the biological mother of Decedent, called SBSD and RPD to obtain information regarding Decedent's death.

35.     Plaintiff is informed and believes and thereon alleges Defendants Responding Deputies, Responding Deputies, FITE, and COUNTY quickly reached a meeting of minds to cover up their illegal behavior and conspired with one another to fabricate facts and details regarding Decedent's incident, withhold and/or destroy evidence of the incident, and put themselves in the best possible but false light, attempting to justify their failures as alleged herein, all in violation of Decedent's and Plaintiff's rights against this manner of misconduct under California and federal law.

36.     The aforementioned incident caused Decedent's death and caused him to suffer pre-death pain and suffering and loss of life, and Plaintiff to suffer damages, all to be proven at the time of trial.

**FACTS RELATED TO PLAINTIFF'S PUBLIC RECORDS ACT REQUEST**

37.     Prior to the filing of this action, Plaintiff attempted to obtain records from LOMA LINDA, and COUNTY pertaining to Decedent's death. However, Plaintiff was denied records or, at best, provided heavily redacted and incomplete records regarding COUNTY and LOMA LINDA's interaction(s) with Decedent in and around the time of his death.

38.     Plaintiff made further inquiries regarding the relevant documents, but was told that further documents would not, or could not, be produced.

39.     On May 26, 2022, Plaintiff submitted a California Public Records Act ("CPRA", Gov't Code §§ 6250, et seq.) request to the San Bernardino County Sheriff's Department and the San Bernardino County Coroner requesting, among other things: (1) all incident, contact, and reports concerning Decedent; (2) all probable cause declarations or reports related to Decedent's arrest or contact; (3) all photographs of Decedent's arrest or contact; (4) all videos concerning the arrest or contact of Decedent, including body camera videos and MVARS; (5) all evidence gathered by Deputies; (6) the identity of the Deputies who contacted Decedent; (7) the identity of the Deputies who arrested Decedent; (8) all custody logs of Decedent; (9)

all booking evidence of Decedent; (10) all documents evidencing Decedent's release from custody; (11) the identity of the Deputies who released Decedent from custody; (12) the time in which Decedent was released from custody; and, (13) all witness statements related to the incident.  Plaintiff's request fully complied with the CPRA.

40.     Defendant COUNTY provided a response to Plaintiff's CPRA request on or about August 30, 2022, but failed to provide any documents regarding the subject incident save several "call summaries and arrest information" regarding the Decedent. Defendant COUNTY wrongfully asserted objections and claimed exemptions with respect to all other documents requested by Plaintiff, and failed to produce them.

41.     On information and belief, Plaintiff believes that other individuals are legally responsible for the death of Decedent, but due to Defendant's failure to properly comply with the California Public Records Act, Plaintiff was precluded from properly identifying other culpable individuals.

## FIRST CLAIM FOR RELIEF
### Failure to Protect (42 U.S.C. § 1983)
### (Against FITE, Responding Deputies and Officers)

42.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

43.     Plaintiff brings this claim as the successor-in-interest of Decedent pursuant to Code of Civil Procedure Sections 377.11, 377.30.

44.     The actions and inactions of Defendants FITE, Responding Deputies and/or Responding Officers, as described above, deprived Decedent of the following clearly established rights under the United States Constitution, including, but not limited to the right to be protected while in custody as secured by the Fourth and Fourteenth Amendments, the right to be free from unlawful, reckless, deliberately indifferent, and conscience shocking failure to provide safe conditions of confinement as secured by

the Fourteenth Amendment, and the right to procedural and substantive due process as secured by the Fourteenth Amendment.

45.     During all times mentioned herein, Defendants FITE, Responding Deputies and Responding Officers, separately and in concert, acted under color and pretense of law, under color of the statutes, ordinances, regulations, policies, practices, customs and usages of their principals, Defendant COUNTY.  Each of the individual Defendants named herein, separately and in concert, deprived Decedent of the rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, and by the laws of the United States.

46.     The above acts of omissions of Defendants FITE, Responding Deputies and Responding Officers were undertaken while under color of state law and resulted in the violation of Decedent's constitutional rights, as stated herein.

47.     The actions of Defendants FITE, Responding Deputies and Responding Officers, and each of them, deprived Decedent of his right to be free from state actions that shock the conscience under the Fourteenth Amendment's Due Process Clause.

48.     As a result of the conduct of Defendants FITE, Responding Deputies and Responding Officers, and each of them, they are liable for Decedent's harm and death, either because they were integral participants in the violations described herein, or because they failed to intervene to prevent these violations.  Defendants' actions and/or omissions were the direct and proximal cause of Decedent's damages and death.

49.     As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants FITE, Responding Deputies and Responding Officers, the Decedent sustained general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial.

50.     The conduct of Defendants FITE, Responding Deputies and Responding Officers was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

51.     Accordingly, Defendants FITE, Responding Deputies and Responding Officers are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

**Due Process—Interference with Parent/Child Relationship (42 U.S.C. § 1983)**

**(Against FITE, Responding Deputies and Officers)**

52.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

53.     This claim arises under 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California, and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the Fourteenth Amendment of the United States Constitution Due Process Clause.

54.     Parents and children possess a constitutionally protected liberty interest in companionship and society with each other.

55.     Defendants FITE, Responding Deputies and Responding Officers, and each of their, actions and inactions deprived Plaintiff of both procedural due process and substantive due process as guaranteed to the Plaintiff under the Fourteenth Amendment of the United States Constitution when Defendants FITE, Responding Deputies' and Responding Officers' actions and inactions proximately caused Decedent's death.  Defendants FITE, Responding Deputies' and Responding Officers' actions and inactions did not further any legitimate state interest and were oppressive

and shock the conscience under the Fourteenth Amendment's Due Process Clause and were done with deliberate indifference to Plaintiff's right to be free from state actions.

56.     The above acts of omissions of Defendants FITE, Responding Deputies and Responding Officers were undertaken while under color of state law and resulted in the violation of Plaintiff's constitutional rights, as stated herein.

57.     The actions of Defendants FITE, Responding Deputies and Responding Officers, and each of them, deprived Plaintiff of her right to be free from state actions that shock the conscience under the Fourteenth Amendment's Due Process Clause.

58.     As a result of the conduct of Defendants FITE, Responding Deputies and Responding Officers, and each of them, they are liable for Decedent's harm and death, either because they were integral participants in the violations described herein, or because they failed to intervene to prevent these violations.  Defendants' actions and/or omissions were the direct and proximal cause of Decedent's death and Plaintiff's damages.

59.     As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants FITE, Responding Deputies and Responding Officers, Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

60.     The conduct of Defendants FITE, Responding Deputies and Responding Officers was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

61.    Accordingly, Defendants FITE, Responding Deputies and Responding Officers are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF

### Due Process—State Created Danger (42 U.S.C. § 1983)

### (Against FITE, Responding Deputies and Officers)

62.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

63.    Plaintiff brings this claim as an individual and the successor-in-interest of Decedent pursuant to Code of Civil Procedure Sections 377.11, 377.30, 377.62.

64.    This claim arises under 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California, and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Decedent and to Plaintiff by said statutes, and by the Fourteenth Amendment of the United States Constitution Due Process Clause.

65.    Defendants FITE, Responding Deputies' and Responding Officers' actions placed Decedent in an actual, particularized danger by creating and exposing Decedent to the danger as alleged herein which Decedent would not have faced but for Defendants' actions.

66.    By Defendants FITE's, Responding Deputies' and Responding Officers' acts and omissions, Defendants acted with deliberate indifference to the known and obvious danger to Decedent's health and safety.

67.    As a result of the conduct of Defendants FITE, Responding Deputies and Responding Officers, and each of them, they are liable for Decedent's harm and death, either because they were integral participants in the violations described herein, or because they failed to intervene to prevent these violations.  Defendants' actions

and/or omissions were the direct and proximal cause of Decedent's death and Plaintiff's damages.

68.     As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants FITE, Responding Deputies and Responding Officers, the Decedent sustained general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial, and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

69.     The conduct of Defendants FITE, Responding Deputies and Responding Officers was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

70.     Accordingly, Defendants FITE, Responding Deputies and Responding Officers are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

### Due Process—Special Relationship (42 U.S.C. § 1983)

### (Against FITE, Responding Deputies and Officers)

71.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

72.     Plaintiff brings this claim as an individual and the successor-in-interest of Decedent pursuant to Code of Civil Procedure Sections 377.11, 377.30, 377.62.

73.     This claim arises under 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California, and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Decedent and to Plaintiff by said statutes, and by the Fourteenth Amendment of the United States Constitution Due Process Clause.

74.     Defendants FITE, Responding Deputies and Responding Officers entered into a special relationship with Decedent by, *inter alia,* taking him into custody on August 18, 2021.

75.     Defendants FITE, Responding Deputies and Responding Officers failed to provide Decedent with adequate medical care while in their custody.

76.     By Defendants FITE's, Responding Deputies' and Responding Officers' acts and omissions, Defendants acted with deliberate indifference to the known and obvious danger to Decedent's health and safety.

77.     As a result of the conduct of Defendants FITE, Responding Deputies and Responding Officers, and each of them, they are liable for Decedent's harm and death, either because they were integral participants in the violations described herein, or because they failed to intervene to prevent these violations.  Defendants' actions and/or omissions were the direct and proximal cause of Decedent's death and Plaintiff's damages.

78.     As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants FITE, Responding Deputies and Responding Officers, the Decedent sustained general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial, and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

79.     The conduct of Defendants FITE, Responding Deputies and Responding Officers was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

80.     Accordingly, Defendants FITE, Responding Deputies and Responding Officers are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF

### *Monell* Claim (42 U.S.C. § 1983)

### (Against Defendant COUNTY)

81.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

82.     Defendant COUNTY is and at all times herein mentioned has been a public entity and incorporated municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendants COUNTY and SBSD possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the COUNTY and SBSD and its tactics, methods, practices, customs and usages related to internal investigations, personnel supervision and records maintenance and the proper application of their powers of arrest by its rank and file, generally.

83.     At all times herein mentioned, Defendants FITE, Responding Deputies and Responding Officers, and each of them, were employees of the SBSD acting under the COUNTY's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments

respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned encouraged the employment, deployment and retention of persons as peace officers who have a propensity for failing to protect citizens in custody, failing to provide safe conditions of confinement, dishonesty, cover-up, bias, and numerous other serious abuses of their duties as peace officers in the employment of the SBSD and COUNTY.

84.     Defendant COUNTY knowingly maintains and permits official *sub-rosa* policies or customs of permitting the occurrence of the kinds of wrongs set forth above, by deliberate indifference to widespread police abuses, failing and refusing to fairly and impartially investigate, discipline or prosecute officers who commit acts of failing to protect citizens in custody, failing to provide safe conditions of confinement, dishonesty, cover-up, bias, and crimes under color of law, each ratified and approved by SBSD.

85.     For example, Defendant COUNTY has a county-wide policy of allowing deputies to give members of the public "courtesy rides" in the back of their patrol cars. On information and belief, this policy is not written, but is taught by "word-of-mouth" from one deputy to another via their field training officer.

86.     On information and belief, Defendant COUNTY is aware of, and allows, its Deputies to use the "courtesy ride" policy to transport persons who are disabled, mentally incompetent, having a mental health crisis, under the influence of controlled substances, or otherwise unable to take care of themselves or present a danger to themselves or others, to locations other than a hospital or COUNTY facility. On information and belief, the COUNTY is aware of, and allows, its Deputies to transport such persons to unsuitable locations which by their nature pose a danger to such persons, and which increase the risk of danger to themselves or others.

87.     Additionally, such use of the "courtesy ride" policy fails to provide such detainees with adequate medical care or safe conditions of confinement, in violation of the United States Constitution.

88.     This use of the "courtesy ride" policy, which is known to Defendant COUNTY, and who thereby ratifies and approves of such policy, has actually led to the death and injury of others by virtue of the fact that impaired persons have been transported to an unsuitable location which has resulted in that person's ultimate injury and/or death, or have been denied adequate medical care.

89.     As a non-exclusive example, on or about July 1, 2019, deputies employed by Defendant COUNTY, while acting within the course and scope of their employment, arrested Clifton Pleasant, Sr., after receiving reports that Mr. Pleasant was acting strangely, was disturbing the peace, and was likely under the influence of heavy drugs. Rather than take Mr. Pleasant to a COUNTY facility or to a hospital, deputies provided him a "courtesy ride" and deposited him on public street, near a low-budget motel and a freeway on-ramp. Deputies did not stay to ensure that Mr. Pleasant was able to access any services at that location or provide him with adequate medical care. And, Mr. Pleasant later died after being hit by a car on the freeway.

90.     On information and belief, Defendants FITE, Responding Officers and Responding Deputies were transporting Decedent, and deposited Decedent at or near the train crossing at or near the intersection of Alessandro Road and San Timoteo Canyon Road in Redlands, California, pursuant to the "courtesy ride" policy.

91.     On information and belief, COUNTY is actually aware that its Deputies' use of the "courtesy ride" policy has led to the injury or death of multiple individuals, yet Defendant COUNTY has done nothing to amend, revoke, or otherwise change the "courtesy ride" policy, and has moreover failed to adequately supervise, investigate, or discipline Deputies who have injured or killed persons by virtue of an unsafe or improper use of the "courtesy ride" policy, thereby failing to curb its improper use.

92.     Additionally, Defendant COUNTY has a county-wide policy of falsifying CAD documents and other reports to obfuscate how Deputies truly use the "courtesy ride" policy and hide the existence of such practice from members of the public. On information and belief, this policy is not written, but is taught by "word-of-mouth" from one deputy to another via their field training officer.

93.     For example, by virtue of this policy Deputies routinely make entries into CAD logs and other reports indicating that a person has been "dropped off" at a hospital or mental health facility when in fact that person has not been "dropped off" at that location. In fact, such persons are instead "dropped" off at unsuitable and dangerous locations such as in the instance of the subject incident.

94.     In this case, Defendant FITE indicated in official records that Decedent had been "dropped off" at Redlands Community Hospital when in fact he was "dropped off" at or near the intersection of Alessandro Road and San Timoteo Canyon Road in Redlands, California.

95.     On information and belief, the falsifying of records associated with "courtesy rides" is actually known to Defendant COUNTY, and who thereby ratifies and approves of such policy. On information and belief, Defendant COUNTY has done nothing to amend, revoke, or otherwise change this policy, and has moreover failed to adequately supervise, investigate, or discipline Deputies who have falsified official records pertaining to their use of the "courtesy ride" policy, thereby failing to curb such untruthful reporting practices.

96.     Defendant COUNTY has a custom and policy of failing to adequately investigate instances in which Deputies have falsified official reports to obfuscate their use of the "courtesy ride" policy, and further has a custom and policy of failing to adequately discipline such persons. Furthermore, Defendant COUNTY fosters a system of abuse in which it encourages Deputies to not report improper conduct by

1  their fellow officers, and encourages a system of silence in which Deputies do not

2  come forward with evidence of such abuse.

3  97.     Finally, Defendant COUNTY has a custom and policy of failing to properly

4  respond to CPRA requests or other valid and legal requests for information by

5  members of the public with respect to incidences involving "courtesy rides." For

6  example, in this case, as further set forth below, Defendant COUNTY failed and

7  refused, and continues to fail and refuse, to provide documents responsive to a valid

8  CPRA request. And, Defendant COUNTY failed and refused to provide documents

9  responsive to a valid CPRA request with respect to the "courtesy ride" provided to

10  Mr. Pleasant in and around July 1, 2019. With respect to Mr. Pleasant's case,

11  Defendant COUNTY failed to ever produce the RIPA form associated with Deputies'

12  first contact with Mr. Pleasant, despite admitting that such a form was filled-out with

13  respect to the incident.

14  98.     On and for some time prior to August 18, 2021 (and continuing to the present

15  date), Defendant COUNTY, deprived Decedent and Plaintiff of the rights and liberties

16  secured to them by the Fourth and Fourteenth Amendments to the United States

17  Constitution, in that said defendant and their supervising and managerial employees,

18  agents, and representatives, acting with gross negligence and with reckless and

19  deliberate indifference to the rights and liberties of the public in general, of Decedent

20  and Plaintiff, and of persons in their class, situation and comparable position in

21  particular, knowingly maintained, enforced and applied an official recognized

22  COUNTY custom, policy, and practice of, or ratified, directed, encouraged, and/or

23  allowed the following:

24      (a)     Defendant COUNTY had knowledge, prior to and since this incident, of

25              repeated allegations of misconduct toward detainees and arrestees;

26              specifically, COUNTY knew Defendants Responding Deputies and

27              Responding Officers, and each of them, had in the past and since

28

Decedent's incident, committed similar acts of failing to protect citizens in custody, failing to provide safe conditions of confinement, falsifying reports, suppressing evidence, and dishonesty, thereby enabling Defendants to continue to violate the constitutional rights of the Decedent and Plaintiff in 2021 and thereafter;

(b)     Defendant COUNTY had knowledge, prior to and since this incident, of similar allegations of failing to protect citizens in custody, failing to provide safe conditions of confinement, falsifying reports, suppressing evidence, and dishonesty by Defendants, and refused to enforce established administrative procedures to insure the rights of detainees and arrestees;

(c)     Defendants COUNTY and SBSD refused to adequately discipline individual officers and employees found to have committed similar acts of failing to protect citizens in custody, failing to provide safe conditions of confinement, and misconduct;

(d)     Defendants COUNTY and SBSD refused to competently and impartially investigate allegations of failing to protect citizens in custody, failing to provide safe conditions of confinement, and misconduct alleged to have been committed by Department employees;

(e)     Defendants COUNTY and SBSD reprimanded, threatened, intimidated, demoted and fired officers who courageously reported unlawful acts by other officers;

(f)     Defendants COUNTY and SBSD covered up acts of misconduct and abuse by COUNTY officers and sanctioned a code of silence by and among officers and management;

(g)    Defendants COUNTY and SBSD knew of and sanctioned the custom and practice of failing to protect citizens in custody, failing to provide safe conditions of confinement, and misconduct;

(h)    Defendants COUNTY and SBSD failed to adequately supervise the actions of officers under their control and guidance;

(i)    Defendant COUNTY and SBSD historically condone and encourage systemic conspiracy of silence among its employees for the purpose of concealing and further wrongful and illegal conduct by its employees; and,

(j)    Defendants COUNTY and SBSD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by August 18, 2021, and thereafter, represented the unconstitutional policies practices and customs of the COUNTY and SBSD.

99.    By reason and pursuant to the aforesaid policies, practices, customs, and usages of Defendants COUNTY and the SBSD, the Decedent sustained general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial, and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

100.    Defendants COUNTY and SBSD, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies

1   with respect to the constitutional rights of Decedent and Plaintiff, and other

2   individuals similarly situated.

3   101.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct

4   and other wrongful acts, Defendants COUNTY and SBSD acted with an intentional,

5   reckless, and callous disregard for the well being of Decedent and Plaintiff and their

6   constitutional as well as human rights.  Defendants COUNTY and SBSD and each of

7   their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely

8   offensive and unconscionable to any person of normal sensibilities.

9   102.    Furthermore, the policies, practices, and customs implemented and maintained

10  and still tolerated by Defendants COUNTY and SBSD were affirmatively linked to

11  and were a significantly influential force and moving force behind Decedent's death

12  and Plaintiff's damages.

13  103.    By reason of the aforesaid policies, customs, practices and usages, Decedent's

14  Fourth and Fourteenth Amendments to the United States Constitution were violated

15  along with Plaintiff's Fourteenth Amendment rights.  Said customs, policies, practices

16  and usages at all times herein mentioned violated constitutional rights including those

17  of Decedent and Plaintiff.

18  104.    Accordingly, Defendant COUNTY is liable to Plaintiff for compensatory

19  damages under 42 U.S.C. § 1983.

20              **SIXTH CLAIM FOR RELIEF**

21          **Violation of EMTALA (42 U.S.C. § 1395dd)**

22     **(Against Defendant LOMA LINDA UNIVERSITY MEDICAL CENTER)**

23  105.    Plaintiff re-alleges and incorporates herein by reference each and every

24  allegation and statement contained in paragraphs 21 through 41, as though fully set

25  forth herein.

26  106.    On information and belief, Defendant LOMA LINDA is licensed by the State of

27  California to provide emergency room services. The hospital holds itself out to the

28

public as providing emergency services. As such, Defendant LOMA LINDA is a participating hospital covered by EMTALA.

### Failure to Screen

107.   Under EMTALA's statutory and regulatory provisions, Defendant LOMA LINDA had a duty to provide an appropriate emergency screening examination to all patients who come into its emergency room seeking examination or treatment, without regard to their ability to pay for emergency medical services or any other factor.

108.   Specifically, EMTALA provides, in 42 U.S.C. § 1395dd(a):

> "[i]n the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department…to determine whether or not an emergency medical condition…exists"

109.   On information and belief, Defendant LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS failed to provide Decedent with an appropriate emergency screening examination on August 18, 2021. Rather, Defendant LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS wrongfully had Decedent forcefully removed from their property prior to him receiving any appropriate medical screening examination, despite the fact that Defendant LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS were or should have been aware of Decedent's need for emergent treatment.

### Disparate Treatment

110.   On information and belief. Decedent did not receive any appropriate medical screening examination prior to being forcibly removed from LOMA LINDA's premises. On information and belief, Decedent received materially different treatment

than other individuals presenting with the same or similar condition(s), in that like individuals received appropriate medical screening examinations and Decedent did not.

111.   On information and belief, LOMA LINDA has standardized policies and procedures, and screening protocols, which govern the medical screening examination to be provided to persons who present to the emergency department in the same or similar condition as Decedent. On information and belief, Defendant LOMA LINDA did not follow its own screening protocol, policy and/or procedure with respect to Decedent. Specifically, Plaintiff is informed and believes that Defendant LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS failed to provide Decedent the medical screening examination called for under Defendant's own policies and procedures.

112.   As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS, Plaintiff has sustained substantial economic damages and non-economic damages of pain and suffering resulting from the loss of the love, companionship, comfort, affection, society, attention, services, moral support, and wrongful death damages of this Decedent in an amount according to proof at trial.

113.   As a direct and proximate result of the death of Decedent by the above-described conduct of Defendant LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS, the Decedent sustained economic damages and general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial.

///

///

///

///

**SEVENTH CLAIM FOR RELIEF**

**California Health and Safety Code § 1317**

**(Against Defendant LOMA LINDA UNIVERSITY MEDICAL CENTER)**

116.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

117.   Defendant LOMA LINDA is licensed by the State of California to provide emergency room services. The hospital holds itself out to the public as providing emergency services. As such, it is subject to the requirements of California Health and Safety Code § 1317.

118.   Under the statutory and regulatory provisions under California Health and Safety Code § 1317, *et seq.,* ("section 1317") Defendants LOMA LINDA and Unidentified Health Care Professionals had a duty to provide an appropriate emergency screening examination to all patients who come into its emergency room seeking examination or treatment, without regard for their ability to pay or any other factor. Specifically, section 1317 states, in pertinent part:

    a.   Emergency services and care shall be provided to any person requesting the services or care, or for whom services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the health facility has appropriate facilities and qualified personnel available to provide the services or care.

    b.  In no event shall the provision of emergency services and care be based upon, or affected by, the person's ethnicity, citizenship, age, preexisting medical condition, insurance status, economic status, ability to pay for medical services, or any other characteristic listed or defined

in subdivision (b) or (e) of Section 51 of the Civil Code, except to the extent that a circumstance such as age, sex, preexisting medical condition, or physical or mental disability is medically significant to the provision of appropriate medical care to the patient.

119.    Defendants LOMA LINDA and Unidentified Health Care Professionals failed to provide Decedent with an appropriate emergency screening examination. Rather, Defendants LOMA LINDA and Unidentified Health Care Professionals wrongfully forcefully removed Decedent from the hospital prior to him receiving any appropriate medical screening examination, despite the fact that Defendants LOMA LINDA and Unidentified Health Care Professionals were actually aware of Decedent's need for emergent treatment.

120.   As a direct and proximate result of the above-described conduct of Defendants LOMA LINDA and Unidentified Health Care Professionals, the Decedent sustained general damages, including pain and suffering and other hedonic damages in an amount according to proof at trial.

## **EIGHTH CLAIM FOR RELIEF**

### **Negligence**

### **(Against all Defendants)**

121.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

122.   By virtue of the foregoing, Defendants FITE, Responding Deputies, Responding OFFICERS, COUNTY, LOMA LINDA and UNIDENTIFIED HEALTH CARE PROFESSIONALS and each of them, owed Decedent a duty of due care, and that duty was breached by said Defendants' negligence and failure to exercise due care in dealing with, detaining, arresting, failing to protect Decedent while in custody, failing to provide safe conditions of confinement for Decedent, and failing to meet their statutory obligations with respect to Decedent.

123.   Defendants COUNTY and LOMA LINDA possessed the power and authority to hire and fire employees and based upon information and belief and negligently hired Defendants FITE, Responding Deputies, Responding Officers and UNIDENTIFIED HEALTH CARE PROFESSIONALS, and each of them, and entrusted them with the following duties: protect citizens during detainment and arrests, protect detainees and arrestees in custody, provide safe conditions of confinement of detainees and arrestees, provide adequate and statutorily compliant medical screening examinations.

124.   By virtue of the foregoing, Defendants COUNTY and LOMA LINDA owed Decedent a duty of due care, and that duty was breached by said Defendants' negligent and careless manner in hiring, training, supervising and retaining by, among other things:

a)      Failing to adequately train its officers in the detention, arrest, and custody of citizens;

b)      Failing to adequately train its officers to protect citizens in custody and to provide safe conditions of confinement for citizens in custody;

c)      Failing to adequately investigate background, training and experience as a officer and his propensity for disobedience;

d)      Failing to provide adequate supervisory control over the actions of its officers in regard to adequate training, supervision, equipment, planning, oversight, and administration;

e)      Failing to control the conduct of its officers who have a known propensity for disobedience and in failing to discipline its officers;

f)      Failing to investigate in good faith, allegations of abuse and failing to protect citizens in custody by its officers;

g)      Failing to discipline its officers who improperly fail to protect and to provide safe conditions of confinement during custody of citizens;

h)      Sanctioning, condoning and approving a law enforcement-wide custom and practice of a code of silence, cover-up and dishonesty, and

i)      Failing to provide an adequate medical screening examination to Decedent.

125.   Defendants FITE, Responding Deputies and Responding Officers are liable to Plaintiff for said negligence pursuant to California Government Code § 820(a), amongst other provisions.

126.   Defendant COUNTY is liable to Plaintiff for said negligence pursuant to California Government Code §§ 815.2(a), 815.4, 820(a), amongst other provisions.

127.   As a direct and proximate result of the actions of Defendants, as complained of herein, Decedent died, and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial (except as to Defendant LOMA LINDA).

128.   As a direct and proximate result of the foregoing, Plaintiff and Decedent have damages as recited above and demands and is entitled to, including, but not limited to, punitive damages (except as to Defendant COUNTY and Defendant LOMA LINDA for punitive damages), and any other relief allowable at law or in equity.

129.   As a direct and proximate result of the above-described conduct of Defendants the Decedent sustained general damages, including pain and suffering and other hedonic damages in an amount according to proof at trial.

///
///
///
///
///

# NINTH CLAIM FOR RELIEF

## Bane Act Violation (Civil Code § 52.1)

## (Against all Defendants)

130.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 21 through 41, as though fully set forth herein.

131.   The actions of all Defendants, as complained of herein, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and/or coercion, the exercise or enjoyment by Decedent the rights secured to him by the California Constitution and otherwise by California law, in violation of California Civil Code § 52.1.  Specifically, Defendants failed to protect Decedent while in custody, failed to provide medical care, and failed to provide safe conditions of confinement of Decedent when said Defendants had a legal obligation to do so.  Defendants violated Decedent's freedom, independence, liberty, obtaining safety and happiness, and right to be free from an unreasonable seizure of his person.

132.   Defendants FITE, Responding Deputies and Responding Officers are liable to Plaintiff for said violations of Decedent's constitutional rights, pursuant to California Civil Code § 52.1, and California Government Code § 820(a), amongst other provisions.

133.   Defendant COUNTY is liable to Plaintiff for said violations of Decedent's constitutional and statutory rights, pursuant to California Civil Code § 52.1, and California Government Code §§ 815.2(a), 815.4, 820(a), amongst other provisions.

134.   As a direct and proximate result of the actions of Defendants, as complained of herein, Decedent died, and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral

1   support damages of this Decedent in an amount according to proof at trial (except as
2   to Defendant LOMA LINDA).

3   135.    As a direct and proximate result of the foregoing, Plaintiff and Decedent have
4   damages as recited above and demands and is entitled to, including, but not limited to,
5   punitive damages (except as to Defendant COUNTY and Defendant LOMA LINDA
6   for punitive damages), treble compensatory damages, attorney's fees, and any other
7   relief allowable at law or in equity.

8   136.   As a direct and proximate result of the above-described conduct of Defendants
9   the Decedent sustained general damages, including pain and suffering and other
10  hedonic damages in an amount according to proof at trial.

11                      **TENTH CLAIM FOR RELIEF**
12   **Violation of California's Public Records Act (Cal. Gov't Code §§ 6250, et seq.)**
13                      **(Against Defendant COUNTY)**

14  137.    Plaintiff re-alleges and incorporates herein by reference each and every
15  allegation and statement contained in paragraphs 21 through 41, as though fully set
16  forth herein.

17  138.    A California governmental entity has the duty to respond to a CPRA request
18  made by an individual of the public.

19  139.    Plaintiff is a member of the public and is beneficially interested in the
20  outcome of these proceedings; he has a clear, present and substantial right to the relief
21  sought herein. Plaintiff has no plain, speedy and adequate remedy at law other than
22  that sought herein.

23  140.    A member of the public who believes that public records are being improperly
24  withheld may bring suit for mandate to enforce the CPRA. (Gov't Code §§ 6258,
25  6259(a).)  If the Court finds that the public official's decision to refuse disclosure is
26  not justified, it shall order the public official to make the records public. (*Id.* §
27  6259(b).)

28

_____
SECOND AMENDED COMPLAINT FOR DAMAGES
32

141.    Defendant COUNTY's failure to provide a proper response to Plaintiff's CPRA Requests and/or to produce responsive documents and names violates the California Public Records Act, which provides that "[p]ublic records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided."  (Gov't Code § 6253(a).)

142.    Defendant COUNTY has a legal obligation to make all public records available for inspection by any member of the public upon request. Defendant COUNTY has not made a valid claim that any of the documents and information sought are exempted from disclosure under proper statutory grounds for withholding documents.

143.    Defendant COUNTY has a policy and practice of not complying with the CPRA.

144.    As a result of Defendant COUNTY's violation of the CPRA, Plaintiff is entitled to attorneys' fees, costs, and equitable relief from the Court to ensure compliance by Defendant COUNTY with the CPRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants FITE, Responding Deputies, Responding Officers, COUNTY, LOMA LINDA, and UNIDENTIFIED HEALTH CARE PROFESSIONALS as follows:

1.    For general, special, hedonic, and compensatory damages in the amount to be proven at trial;

2.    For punitive damages in an amount to be proven at trial (save against COUNTY and LOMA LINDA);

3.    For interest;

4.    For costs;

5.      For reasonable costs of this suit and attorneys' fees pursuant to 42 U.S.C. § 1988;

6.      For attorneys' fees pursuant to Civil Code §§ 52, 52.1;

7.      Any civil penalties, including treble damages and a minimum of $4,000.00; and,

8.      For such further other relief as the Court may deem just, proper, and appropriate.

        AND WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants COUNTY as follows:

    1.   For reasonable costs of this suit and attorneys' fees;

    2.   For equitable relief to ensure compliance with the CPRA; and,

    3.   For such further other relief as the Court may deem just, proper, and appropriate.

Date: December 7, 2022              **CONLOGUE LAW, LLP**


                                    By:   /s/Ashley M. Conlogue
                                         Kevin S. Conlogue
                                         Ashley M. Conlogue
                                         Attorneys for Plaintiff
                                         DEBORAH MOLLER

SECOND AMENDED COMPLAINT FOR DAMAGES
34

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a trial by jury.

3

4     Date: December 7, 2022          **CONLOGUE LAW, LLP**

5

6

7                              By: __/s/Ashley M. Conlogue_____
                                   Kevin S. Conlogue
8                                  Ashley M. Conlogue
                                   Attorneys for Plaintiff
9                                  DEBORAH MOLLER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF DEBORAH MOLLER**

I, Deborah Moller, declare that if called as a witness, I could and would testify competently to the following, of my own personal knowledge:

1. Bret Breunig is deceased.

2. Decedent passed away on or about August 18, 2021 in County of San Bernardino, State of California.

3. No proceeding is now pending in California for administration of the Decedent's estate.

4. I am the Decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the Decedent's interest in the action or proceeding as I am his biological mother.

5. No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding as Decedent did not leave any issue.

6. Attached hereto as Exhibit 1 is a true and correct copy of Decedent's death certificate and is incorporated herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 8, 2022, at <u>    3:54pm DM                   </u>.



Deborah Moller

DECLARATION OF DEBORAH MOLLER

EXHIBIT 1

CERTIFICATION OF VITAL RECORD

# COUNTY of SAN BERNARDINO
## DEPARTMENT OF PUBLIC HEALTH
### 351 N. MT. VIEW AVENUE, SAN BERNARDINO, CALIFORNIA 92415-0010

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 3/06)

STATE FILE NUMBER: 3052021223250
LOCAL REGISTRATION NUMBER: 3202136013455

**DECEDENT'S PERSONAL DATA**

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) | BRET |
| 2. MIDDLE | LAWRENCE |
| 3. LAST (Family) | BREUNIG |
| AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST) | |
| 4. DATE OF BIRTH mm/dd/ccyy | 01/11/1988 |
| 5. AGE Yrs. | 33 |
| IF UNDER ONE YEAR — Months / Days | |
| IF UNDER 24 HOURS — Hours / Minutes | |
| 6. SEX | M |
| 9. BIRTH STATE/FOREIGN COUNTRY | CA |
| 10. SOCIAL SECURITY NUMBER | 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 |
| 11. EVER IN U.S. ARMED FORCES? | NO (X) |
| 12. MARITAL STATUS/SRDP (at Time of Death) | NEVER MARRIED |
| 7. DATE OF DEATH mm/dd/ccyy | 08/18/2021 |
| 8. HOUR (24 Hour) | 1232 |
| 13. EDUCATION – Highest Level/Degree | HS GRADUATE |
| 14/15. WAS DECEDENT HISPANIC/LATINO/a/SPANISH? | NO (X) |
| 16. DECEDENT'S RACE – Up to 3 races may be listed | WHITE |
| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | BODYWORK |
| 18. KIND OF BUSINESS OR INDUSTRY | AUTOMOTIVE |
| 19. YEARS IN OCCUPATION | 10 |

**USUAL RESIDENCE**

| Field | Value |
|---|---|
| 20. DECEDENT'S RESIDENCE (Street and number or location) | 1524 MOUNTAIN VIEW TRL |
| 21. CITY | BEAUMONT |
| 22. COUNTY/PROVINCE | RIVERSIDE |
| 23. ZIP CODE | 92223 |
| 24. YEARS IN COUNTY | 33 |
| 25. STATE/FOREIGN COUNTRY | CALIFORNIA |

**INFORMANT**

| Field | Value |
|---|---|
| 26. INFORMANT'S NAME, RELATIONSHIP | DEBORAH LYNN MOLLER, MOTHER |
| 27. INFORMANT'S MAILING ADDRESS | 1524 MOUNTAIN VIEW TRL, BEAUMONT, CA 92223 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| Field | Value |
|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | |
| 29. MIDDLE | |
| 30. LAST (BIRTH NAME) | |
| 31. NAME OF FATHER/PARENT—FIRST | |
| 32. MIDDLE | |
| 33. LAST | |
| 34. BIRTH STATE | UNK |
| 35. NAME OF MOTHER/PARENT—FIRST | DEBORAH |
| 36. MIDDLE | LYNN |
| 37. LAST (BIRTH NAME) | HAMMERSLEY |
| 38. BIRTH STATE | CA |

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

| Field | Value |
|---|---|
| 39. DISPOSITION DATE mm/dd/ccyy | 09/10/2021 |
| 40. PLACE OF FINAL DISPOSITION | RES DEBORAH LYNN MOLLER 1524 MOUNTAIN VIEW TRL., BEAUMONT, CA 92223 |
| 41. TYPE OF DISPOSITION(S) | CR/RES |
| 42. SIGNATURE OF EMBALMER | NOT EMBALMED |
| 43. LICENSE NUMBER | |
| 44. NAME OF FUNERAL ESTABLISHMENT | WEAVER MORTUARY & CREMATORY |
| 45. LICENSE NUMBER | FD644 |
| 46. SIGNATURE OF LOCAL REGISTRAR | MICHAEL A. SEQUEIRA, MD |
| 47. DATE mm/dd/ccyy | 09/10/2021 |

**PLACE OF DEATH**

| Field | Value |
|---|---|
| 101. PLACE OF DEATH | RAILROAD RIGHT OF WAY |
| 102. IF HOSPITAL, SPECIFY ONE | |
| 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | Other (X) |
| 104. COUNTY | SAN BERNARDINO |
| 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 714 FT N/W OF ALESSANDRO RD & SAN TIMOTEO CYN RD |
| 106. CITY | REDLANDS |

**CAUSE OF DEATH**

| Field | Value |
|---|---|
| 107. CAUSE OF DEATH | |
| IMMEDIATE CAUSE (A) | DECAPITATION WITH BLUNT FORCE TRAUMA OF THE HEAD |
| Time Interval Between Onset and Death | INS |
| 108. DEATH REPORTED TO CORONER? | YES (X) 702108693 |
| 109. BIOPSY PERFORMED? | NO (X) |
| 110. AUTOPSY PERFORMED? | NO (X) |
| 111. USED IN DETERMINING CAUSE? | NO (X) |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | NONE |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? | NO |
| 113A. IF FEMALE, PREGNANT IN LAST YEAR? | |

**PHYSICIAN'S CERTIFICATION**

| Field | Value |
|---|---|
| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | |
| 115. SIGNATURE AND TITLE OF CERTIFIER | |
| 116. LICENSE NUMBER | |
| 117. DATE mm/dd/ccyy | |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | |

**CORONER'S USE ONLY**

| Field | Value |
|---|---|
| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | |
| 120. MANNER OF DEATH | Accident (X) |
| 120. INJURED AT WORK? | NO (X) |
| 121. DATE mm/dd/ccyy | 08/18/2021 |
| 122. HOUR (24 Hours) | 1232 |
| 123. PLACE OF INJURY | RAILROAD RIGHT OF WAY |
| 124. DESCRIBE HOW INJURY OCCURRED | ATTEMPTED TO CLIMB ONTO MOVING TRAIN, FELL, AND WAS STRUCK BY TRAIN |
| 125. LOCATION OF INJURY | APPROX 714 FT N/W OF ALESSANDRO RD. & SAN TIMOTEO CYN. RD. REDLANDS, CA 92373 |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER | MARLENE E. LEYVA |
| 127. DATE mm/dd/ccyy | 09/08/2021 |
| 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER | MARLENE E. LEYVA, DEP CORONER |

**STATE REGISTRAR** A | B | C | D | E

FAX AUTH # | CENSUS TRACT

## CERTIFIED COPY OF VITAL RECORD

STATE OF CALIFORNIA } SS
COUNTY OF SAN BERNARDINO

DATE ISSUED: OCT 19 2021

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, SAN BERNARDINO DEPARTMENT OF PUBLIC HEALTH.

*Michael A. Sequeira MD*
MICHAEL A. SEQUEIRA, M.D.
COUNTY HEALTH OFFICER
REGISTRAR OF VITAL STATISTICS

\* 0 0 2 9 8 5 7 8 6 \*

**This copy not valid unless prepared on an engraved border displaying the date, seal and signature of Registrar.**

PHSCO (Rev 7/06/21)

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**