SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
ANITA K. CLARKE (SBN 321015)
aclarke@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants, COUNTY OF SAN BERNARDINO
and BREANA FITE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH MOLLER, an individual and successor –in-interest of BRET BREUNIG, deceased,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>COUNTY OF SAN BERNARDINO,  a public entity; UNIDENTIFIED DEPUTIES, individuals; CITY OF REDLANDS, a public entity; UNIDENTIFIED OFFICERS, individuals; LOMA LINDA UNIVERSITY MEDICAL CENTER, a non-profit corporation; UNIDENTIFIED HEALTHCARE PROFESSIONALS, individuals; and KENNETH BREUNIG, a nominal Defendant<br><br>                    Defendant. | MASTER CASE NO. 5:22-CV-01306-DSF-MAR<br>*Consolidated with 5:22-CV-02135-DSF-MAR*<br><br>*Assigned for All Purposes to:*<br>*Hon. Dale S. Fischer– Courtroom 7D*<br><br>**COUNTY DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>PTC Date: December 11, 2023<br>Time: 3:00 p.m.<br>Courtroom: 7D<br><br>*Trial Date:*          *01/09/24*<br><br>*Complaint filed:*   *07/27/22*<br>                           *01/30/23* |
| KENNETH BREUNIG, individually and as successor-in-interest to BRET BREUNIG,<br><br>                    Plaintiff,<br><br>        vs. | |

1

**COUNTY DEFENDANTS'**
**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1  COUNTY OF SAN BERNARDINO, a
   public entity, BREANA FITE,
2  individually; LOMA LINDA
   UNIVERSITY MEDICAL CENTER,
3  California a Nonprofit Corporation;
   DOE HEALTH CARE
4  PROFESSIONALS, individuals and
   DOES 1-10, individuals,
5

6                    Defendants.
7  _____

8  ///

9  ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

**COUNTY DEFENDANTS'**
**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF CONTENTS

PAGE(S)

I.    CLAIMS AND DEFENSES (Local Rule 16-4.1 (a-i))......................................8

II.   MOTION TO SEPARATE TRIAL INTO FOUR PHASES .........................25

III.  JURY TRIAL (Local Rule 16-4.4) .................................................................27

IV.  ATTORNEYS' FEES (Local Rule 16-4.5)......................................................27

V.   ABANDONMENT OF ISSUES (Local Rule 16-4.6) ....................................28

TABLE OF AUTHORITIES

PAGES(S)

Cases

*Ashcroft v. al Kidd,*
    563 U.S. 731 (2011)...............................................................................23

*Ault v. Speicher*,
    634 F.3d 942 (7th Cir. 2011) ...............................................................22

*Bates v. United Parcel Serv.*,
    204 F.R.D. 440 (N.D. Cal. 2001) .........................................................26

*Brewster v. Board of Educ. of Lynwood Unified School Dist.,*
    149 F.3d 971 (9th Cir. 1998) ...............................................................22

*Brooks v. Vallejo City Unified School Dist.,*
    2013 WL 943460 (E.D. Cal. 2013) ......................................................21

*Calhoun v. Cruz*,
    No. 2:20-CV-2209 DB P, 2022 WL 1527401 (E.D. Cal. Apr. 26, 2022).......21, 22

*Castro v. Cnty. of Los Angeles*,
    833 F.3d 1060 (9th Cir. 2016) .............................................................14

*Christie v. Lopa*,
    176 F.3d 1231 (9th Cir. 1999) .............................................................17

*City of Escondido, Cal. v. Emmons,*
    139 S. Ct. 500 (2019)...........................................................................23

*Clouthier v. Cnty. of Contra Costa,*
    591 F.3d 1232 (9th Cir. 2010) .............................................................17

*Collens v. City of New York*,
    222 F.R.D. 249 (S.D.N.Y. 2004)..........................................................26

*Connick v. Thompson,*
    *563* U.S. 51 (2011)..............................................................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................24

*Deats v. County of Orange,*
   2010 WL 11549563 (C.D. Cal. 2010) ................................................27

*DeShaney v. Winnebago County of Department of Social Services,*
   489 U.S. 189 (1989)...........................................................................8, 13

*District of Columbia v. Wesby,*
   138 S.Ct. ..............................................................................................23

*Gallegos v. City of Los Angeles,*
   308 F.3d 987 (9th Cir. 2002) ...............................................................13

*Green v. County of Los Angeles,*
   2014 WL 174988 (C.D. Cal. 2014) ......................................................27

*Halvorsen v. Baird,*
   146 F.3d 680 (9th Cir. 1998) ...............................................................13

*Hammerlord v. Filner,*
   2013 WL 4046676 (S.D. Cal. 2013)......................................................21

*Kennedy v. City of Ridgefield,*
   439 F.3d 1055 (9th Cir. 2006) ................................................................8

*L.W. v. Grubbs,*
   92 F.3d 894 (9th Cir. 1996) ..................................................................11

*Lieberman-Sach v. Harvard Community Health Plan,*
   882 F.Supp. 249 (D.R.I 1995) .............................................................25

*Miller v. New Jersey Transit Authority,*
   160 F.R.D. 37 (D.N.J. 1995) ................................................................25

*Motley v. City of Fresno,*
   2020 WL 3642502, n.1 (E.D. Cal. July 5, 2020)................................27

*Munger v. City of Glasgow Police Dept.,*
   227 F.3d 1082 (9th Cir. 2000) ................................................................8

*Murguia v. Langdon,*
   61 F.4th 1096 (9th Cir. 2023) .......................................................11, 13

*Nally v. Grace Community Church,*
   47 Cal.3d 278 (1988) ............................................................................18

**5**
**COUNTY DEFENDANTS'**
**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*Nunez v. Davis,*
  169 F.3d 1222 (9th Cir. 2000) .................................................................25

*Osborn v. City of Whittier,*
  103 Cal.App.2d 609 (2d, 1951) ...............................................................18

*Patel v.  Kent School District,*
  648 F. 3d 965 .............................................................................................13

*Pleasant v.  Miranda,*
  2021 WL 3160190 (C.D. Cal. 2021) .........................................13, 14, 17

*Quintanilla v. City of Downey,*
  84 F.3d 353 (9th Cir. 1996) .....................................................................27

*Saucier v. Katz,*
  533 U.S. 194, 121 S.Ct. 2151 (2001) .....................................................22

*Shafer v. County of Santa Barbara,*
  868 F.3d 1110 (9th Cir. 2017) .................................................................23

*Sharp v. County of Orange,*
  871 F.3d 901 (9th Cir. 2017) ...................................................................14

*Spears v. Anderson,*
  2009 U.S. Dist. LEXIS 36792 (D. Nev. 2009).........................................26

*Trout v. County of Madera,*
  2023 WL 3994932 (E.D. Cal. 2023) ........................................................11

*Van Ort v. Estate of Stanewich,*
  92 F.3d 831 (9th Cir. 1992) .....................................................................16

*Vosbinder v. Ambach,*
  926 F.2d 1333 (2d Cir. 1991) ..................................................................26

*Wheeler v. City of Santa Clara,*
  894 F.3d 1046 (9th Cir. 2018) .................................................................10

*White v. Pauly,*
  137 S.Ct. 548 (2017)................................................................................14

*Witherbee v. Honeywell, Inc.,*
  151 F.R.D. 27 (N.D.N.Y 1993) ................................................................25

*Zofcin v. Dean*,
   144 F.R.D. 203 (S.D.N.Y. 1992) ............................................................26


Statutes

42 *U.S.C.* § 1983 ............................................................................passim

42 *U.S.C.* § 1988 ............................................................................27

California *Civil Code* § 52.1(b) .............................................................20

California *Government Code* § 6259 ......................................................22

California *Government Code* § 6250 ......................................................21

WIC 5150 ............................................................................9, 12

**COUNTY DEFENDANTS'**
**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**CLAIMS AND DEFENSES (Local Rule 16-4.1 (a-i))[1]**

    **a) Claim 1 –** Violation of 42 *U.S.C.* §1983 – Failure to Protect

    **b) Elements Required for Claim 1** – Violation of 42 *U.S.C.* §1983 – Failure
       to Protect

    It is well settled that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process clause." *DeShaney v. Winnebago County of Department of Social Services,* 489 U.S. 189, 197 (1989). It is therefore Defendants' position, as set forth in their Motion for Summary Judgment, that there is no constitutionally recognized duty to protect, because the general rule is that the government actors are not liable for their omissions. *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082, 1086 (9th Cir. 2000) citing *DeShaney*, 489 U.S. at 195. The only two exceptions to this rule are when there is a Special Relationship and/or a State Created Danger, both of which are addressed in later Claims for Relief. *DeShaney*, 489 U.S. 189 at 199; *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).

    It therefore remains a mystery what the basis is for this stand-alone First Claim for Relief as it was not addressed in Plaintiffs' Summary Judgment opposition.

---

[1] Plaintiff Deborah Moller filed her Third Amended Complaint against the County and Fite on January 30, 2023 (Dkt. 64) in 5:22-CV-01306-DSF-MAR. Plaintiff Kenneth Breunig filed his Complaint against the County on December 1, 2022, in 5:22-CV-02135-DSF-MAR (Dkt. 1). On January 30, 2023, this Court consolidated 5:22-CV-01306-DSF-MAR and 5:22-CV-02135. (Dkt. 63). On July 27, 2023, this Court granted Plaintiff Moller's Petition to name Ms. Moller as the sole successor-in-interest (Dkt. 89).

Further, the Court dismissed certain claims of Breunig he asserted individually pursuant to the Defendant County and Fite's Motion to Dismiss. (Dkt. 80.) Breunig's claims he asserted as successor-in-interest were thereby dismissed when the Court ordered Moller remain as the sole successor-in-interest. (Dkt. 80.) The only remaining claim of Plaintiff Kenneth Breunig is a claim for Deprivation of Substantive Due Process – Interference with Familial Relations (42 *U.S.C.* § 1983) against Fite.

Finally, Plaintiff Moller's Claims 6 and 7 are not asserted against Defendants County of San Bernardino or Deputy Fite. (Dkt. 64.) As such, Claims 6 and 7 are not addressed in this Memorandum of Contentions of Fact and Law submitted by the County Defendants.

### c) County Defendants' Key Evidence in Opposition to Claim 1

County Defendants maintain Deputy Fite is entitled to qualified immunity.

It is undisputed that Mr. Breunig's cause of death was a result of injuries he sustained while attempting to board a train after his contact with Deputy Fite had ceased. And, once Mr. Breunig left Deputy Fite's vehicle, there was no constitutionally recognized duty to protect him because the general rule is that the government actors are not liable for their omissions.

In response to Plaintiffs' claims that Deputy Fite should have either arrested or committed Mr. Breunig, Deputy Fite had no reason to place Mr. Breunig under arrest, nor did Deputy Fite believe Mr. Breunig was a danger to himself or others or gravely disabled such that he could be committed under WIC 5150.

County Defendants will call Deputy Fite to testify as to her contact with Mr. Breunig. County Defendants will also call the LLUMC dispatcher, Mary Matlean, who made the initial call to have Deputy Fite respond to contact Mr. Breunig on the LLUMC campus. LLUMC security guard, Joseph Miller, who initially contacted Mr. Breunig and was present for some of the contact between Mr. Breunig and Deputy Fite will be called to testify that he confirmed to Deputy Fite that Mr. Breunig had been "discharged" which would lead any reasonable officer to conclude he did not require further treatment. County Defendants will also call Deputy Vaca who responded and was present for some of the contact between Mr. Breunig and Deputy Fite and also did not find a basis to commit or arrest Mr. Breunig, as advocated by Plaintiff. It is anticipated that all witnesses will confirm that they had no information and observed no evidence to support that Mr. Breunig was either under the influence of a controlled substance, nor was he a danger to himself or others nor gravely disabled such that he could be committed under WIC 5150. The legal significance of this will be explained through the testimony of police practices expert Clarence Robert Chapman who will testify as to the limited options available

to a reasonable officer in the shoes of Deputy Fite on that day.

County Defendants may call hospital personnel from Arrowhead Regional Medical Center and Loma Linda University Medical Center who will also testify that on the day of and the days leading up to the incident, Mr. Breunig was not unable to care for himself.

County Defendants may call Deputy Adam Pena, Sheriff's Custody Specialist Stacy Hartz, and County's PMK Shelby Moore, who will testify to events leading up to Mr. Breunig's contact with Deputy Fite and will testify that Mr. Breunig was not unable to care for himself.

Finally, County Defendants will call Dr. Richard Clark, who is an expert, and a board-certified medical toxicologist and emergency physician, who will testify as to the Fentanyl found in Mr. Breunig, the effects of Fentanyl, including signs, symptoms, and behavior associated with Fentanyl use and abuse, and that Mr. Breunig was not displaying any obvious signs of being under the influence of Fentanyl during his interaction with Deputy Fite and that Mr. Breunig's cause of death was not Fentanyl.

a) **Claim 2 –** Violation of 42 *U.S.C.* §1983 – Due Process – Interference with Parent/Child Relationship

b) **Elements Required for Claim 2** – Violation of 42 *U.S.C.* §1983 – Due Process – Interference with Parent/Child Relationship

1. Decedent's constitutional rights were violated;
2. There was a protected parent child relationship;
3. There was consistent involvement from parent in child's life and participation in child-rearing activities.

*See*, *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018).

///

### c) County Defendants' Key Evidence in Opposition to Claim 2

County Defendants will call all the same witnesses identified in Claim 1 to establish that there was no underlying constitutional violation with respect to decedent.

As to Plaintiff Kenneth Breunig, it is undisputed, he did not have any relationship with his son, Bret Breunig, for the last 18 years prior to Bret Breunig's death.  County Defendants will call Plaintiff Kenneth Breunig and Plaintiff Deborah Moller to testify as to Plaintiff Kenneth Breunig's complete absence in the majority of Decedent's life.

### a) Claim 3 – Violation of 42 *U.S.C.* §1983 – State Created Danger

### b) Elements Required for Claim 3 – Violation of 42 *U.S.C.* §1983 – State Created Danger

1. Affirmative conduct of the state in creating or enhancing a danger to plaintiff that the plaintiff would not otherwise have faced;

2. The enhanced danger was foreseeable;

3. The state acted with deliberate indifference to known or obvious danger.

*See, Trout v. County of Madera*, 2023 WL 3994932 *14 (E.D. Cal. 2023); *Murguia v. Langdon,* 61 F.4th 1096, 1111 (9th Cir. 2023), quoting *L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir. 1996).

### c) County Defendants' Key Evidence in Opposition to Claim 3

County Defendants maintain Deputy Fite is entitled to qualified immunity.

It is undisputed that Mr. Breunig's cause of death was a result of injuries he sustained while attempting to board a train after his contact with Deputy Fite had ceased.   And, once Mr. Breunig left Deputy Fite's vehicle, there was no constitutionally recognized duty to protect him because the general rule is that the government actors are not liable for their omissions.

In response to Plaintiffs' claims that Deputy Fite should have either arrested or committed Mr. Breunig, Deputy Fite had no reason to place Mr. Breunig under arrest, nor did Deputy Fite believe Mr. Breunig was a danger to himself or others or gravely disabled such that he could be committed under WIC 5150.

County Defendants will call Deputy Fite to testify as to her contact with Mr. Breunig.  County Defendants will also call the LLUMC dispatcher, Mary Matlean, who made the initial call to have Deputy Fite respond to contact Mr. Breunig on the LLUMC campus. County Defendants will also call LLUMC security guard, Joseph Miller, who initially contacted Mr. Breunig and was present for some of the contact between Mr. Breunig and Deputy Fite and can testify that he informed Deputy Fite that Mr. Breunig had been discharged.  County Defendants will also call Deputy Vaca who responded and was present for some of the contact between Mr. Breunig and Deputy Fite and did not witness any behavior sufficient to commit or arrest Mr. Breunig, as advocated by Plaintiffs.  It is anticipated that all witness will confirm they had no information and observed no evidence to support that Mr. Breunig was either under the influence of a controlled substance, nor was he a danger to himself or others or gravely disabled such that he could be committed under WIC 5150.

County Defendants may also call civilian witnesses, Thomas Lamar, and Juan Lievanos, who will testify as to the area in which the incident occurred, as well Mr. Breunig's actions after Deputy Fite ceased contact with him.  Specifically, civilian witness Thomas Lamar will testify that he travels through the area often and there is a trail walkway that bike riders and joggers utilize.  Mr. Lamar will also describe the incident intersection as always having a cart guy selling food.  Further, Mr. Lamar will testify that when he saw Mr. Breunig in that area, outside Deputy Fite's vehicle walking away from her, he believed Mr. Breunig might live in the area and did not believe Mr. Breunig was in danger until Mr. Breunig actually approached the train, at which point, Deputy Fite had already left the scene.  County Defendants will also call

civilian witness Juan Lievanos who will testify that he had been commuting through the incident area for the last two to three weeks.  And, Mr. Lievanos will testify that when he observed Mr. Breunig walking towards the train, he assumed Mr. Breunig was walking toward homeless camps on the side of the tracks, not that Mr. Breunig would attempt to board the moving train.

County Defendants will call Clarence Robert Chapman, who is an expert in law enforcement practices and procedures, and will testify to police practices and procedures, and who will testify that Deputy Fite's determinations and subsequent actions were reasonable.

a) **Claim 4 –** **Violation of 42** *U.S.C.* **§1983 – Special Relationship**

b) **Elements Required for Claim 4** – Violation of 42 *U.S.C.* §1983  –
   Special Relationship

   1. Whether the state took Mr. Breunig "into custody" and held him
      against his will.

      *See*, *Murguia v. Langdon,* 61 F.4th 1096, 1108 (9th Cir. 2023), quoting
      *Patel v.  Kent School District*, 648 F. 3d 965 at 972 and *DeShaney*, 489
      U.S. at 199–200; *Gallegos v. City of Los Angeles,* 308 F.3d 987, 991
      (9th Cir. 2002); *Halvorsen v. Baird*, 146 F.3d 680, 684-685 (9th Cir.
      1998); *Pleasant v.  Miranda*, 2021 WL 3160190 *5 (C.D. Cal. 2021)

Plaintiffs now claim in their exchanged jury instructions that they are entitled to a jury instruction as to whether Decedent's rights to medical care as a pretrial detainee were violated such that they may receive the following 14th Amendment instruction:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;

(4) By not taking such measures, the defendant caused the plaintiff's injuries. *See, Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); 9th Cir. Model Instruction 9.30.

Defendants maintain as a preliminary matter, that Plaintiffs Fourth Claim for Relief never mentions a denial of medical care and therefore this is an inappropriate attempt by Plaintiffs to use their pretrial documents to amend the Third Amended Complaint.  Further, as set forth above and in Defendants' Motion for Summary Judgment Plaintiffs cannot meet the threshold requirement that Mr. Breunig was "in custody" sufficient to be called a pretrial detainee entitled to this instruction.  *See, Pleasant v. Miranda*, 2021 WL 3160190 *5 (C.D. Cal. 2021) (declining to apply special relationship doctrine where "decedent was not in custody at the time of his death".).

At minimum there is no clearly established case law to support that continuing to keep an individual in a patrol car temporarily after they ask to be let out is sufficient to establish that they are a pretrial detainee subject to the special relationship doctrine. *See, White v. Pauly*, 137 S.Ct. 548, 552 (2017) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case."); *Sharp v. County of Orange,* 871 F.3d 901, 911 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* [public employees] *in this case* that *their particular conduct* was unlawful.")(italics original).

///
///
///

### c)  County Defendants' Key Evidence in Opposition to Claim 4

County Defendants maintain Deputy Fite is entitled to qualified immunity.

It is undisputed that when Deputy Fite initially contacted Mr. Breunig and made the decision to give him a courtesy ride, Mr. Breunig was not under arrest and he voluntarily entered her patrol car, without handcuffs, and dictated to Deputy Fite where he wanted to go and where they drove.  Clearly, Mr. Breunig was not in custody at this time rendering the special relationship doctrine inapplicable as to Deputy Fite's transport of Mr. Breunig from LLUMC to Cardinal Court.

Moreover, Deputy Fite will testify that when they arrived at Cardinal Court, it was unsafe to leave Mr. Breunig at that location as he had provided several inconsistent statements about where he lived, he could not establish any proof of residency at the location, and Mr. Breunig had a prior criminal record consisting of residential burglary.   Further, at this time, Mr. Breunig indicated he may be withdrawing from drugs and therefore Deputy Fite concluded it was best to take him to a hospital, a safer location to investigate.

Finally, Deputy Fite will testify that when Mr. Breunig demanded to be let out of the vehicle, Deputy Fite was in a location where her concerns about his connection to the Cardinal Court residence were no longer in play.  And, she had no basis to continue an investigative detention, nor did she have probable cause to make an arrest based upon the facts known to her at that point.  As such, Deputy Fite had no constitutional option but to let Mr. Breunig voluntarily leave.  And, for these reason, Mr. Breunig was never in "custody," and certainly was not in custody when he walked away from her vehicle, and thus the special relationship doctrine is inapplicable.

County Defendants will call Clarence Robert Chapman, who is an expert in law enforcement practices and procedures, and will testify to police practices and procedures, and who will testify that Deputy Fite's determinations and subsequent actions were reasonable.

    a) **Claim 5 –** Violation of 42 *U.S.C.* §1983 – Municipal Liability for Unconstitutional Policies, Procedures, Practices and Customs

    b) **Elements Required for Claim 5** – Violation of 42 *U.S.C.* §1983 – Municipal Liability for Unconstitutional Policies, Procedures, Practices and Customs

      1. County Defendants acted under color of state law;

      2. The act[s] of County Defendants deprived Mr. Breunig of his particular rights under the United States Constitution;

      3. County Defendants acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the County Defendant; and

      4. County Defendants' official policy or widespread or longstanding practice or custom caused the deprivation of Mr. Breunig's rights by the County Defendants; that is, the County Defendants' official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

      *See, Ninth Circuit Model Civil Jury Instruction*, No. 9.5; *see also, Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1992).

      5. For purposes of a Failure to Train claim, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference.

      *See, Connick v. Thompson 563* U.S. 51, 62 (2011).

      6. Ratification liability may attach when a final policymaker ratifies a subordinate's unconstitutional action and the basis for it; A mere failure to adequately discipline, without more, is insufficient to support a § 1983 ratification claim.

See, *Christie v. Lopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1253-1254 (9th Cir. 2010).

### c) County Defendants' Key Evidence in Opposition to Claims 5

Without any admissible evidence, Plaintiffs allege that the County's practice of giving courtesy rides is unconstitutional because it has led to serious injuries of other individuals, and also led to the death of Mr. Breunig.  However, County Defendants' will present evidence that this district has already specifically determined less than two months before this incident, that the County's practice of giving courtesy rides ***does not*** violate the Constitution when these same attorneys challenged the same practice in unrelated litigation.  *See, Pleasant v.  Miranda,* 2021 WL 3160190 *7 (C.D. Cal. June 24, 2021) ("the policy of giving courtesy rides does not violate the constitution or any laws.").  County Defendants are not aware of any cases decided thereafter wherein courtesy rides by law enforcement are on their face unconstitutional.  Further, there is no evidence of a pattern of prior, similar violations of federally protected rights.

Should Plaintiffs' *Monell* claim proceed, County Defendants' expert Clarence Robert Chapman, who is an expert in law enforcement practices and procedures, will testify to the County's practices and procedures, and specifically testify that courtesy rides are reasonable and not contrary to any state standard, and are a generally accepted practice.

Further, in response to the allegation that the County allegedly failed to train Deputy Fite and/or Deputy Vaca with respect to their conduct as applied in this case, even if true, is insufficient to state a claim as Plaintiffs have no evidence of other similar incidents.  Similarly, Plaintiffs have no evidence a policy maker ratified Deputy Fite's conduct that caused a constitutional violation.  Rather the undisputed evidence is that Deputy Fite was investigated and disciplined for various policy violations; the following individuals will testify that Deputy Fite was thoroughly

1  investigated and was disciplined for various policy violations: Investigating Sergeant

2  Tyson Niles, Lieutenant Matt Griffith, and Chief Krusbe.

3      **a) Claim 8 –** Negligence

4      **b) Elements Required for Claim 8** – Negligence

5          1. County Defendants had a duty to use due care;

6          2. County Defendants breached that duty;

7          3. The breach was the proximate or legal cause of the resulting injury.

8              *See, Nally v. Grace Community Church*, 47 Cal.3d 278 (1988).

9          4. It was reasonably foreseeable that injury or damage would likely occur.

10             *See, Osborn v. City of Whittier*, 103 Cal.App.2d 609, 615-616 (2d,

11             1951)

12     **c) County Defendants' Key Evidence in Opposition to Claim 8**

13     As an initial matter, as to Plaintiff's Eighth Claim for Negligence, with respect

14 to the hiring, training, and supervising of Deputy Fite, is not a legally cognizable claim

15 as a public entity cannot be held liable for negligent hiring, supervision, or retention of

16 a public employee absent a specific statutorily-imposed mandatory duty with respect to

17 the Plaintiff.

18     As to Deputy Fite, she was not the proximate cause of Mr. Breunig's death.

19 Deputy Fite will testify that she had no reason to know Mr. Breunig would walk away

20 from her patrol car, cross the street, and attempt to board a moving train.  Further,

21 County Defendants' will call Clarence Robert Chapman, who is an expert in law

22 enforcement practices and procedures, and he will testify that it was not reasonable for

23 Deputy Fite to have foreseen or anticipated that Mr. Breunig would walk away from her

24 to cross the street, toward the train tracks, and attempt to board a moving train.  Further,

25 he will testify that it was not reasonably foreseeable that Mr. Breunig's injuries were

26 likely to occur when Deputy Fite ended her contact with Mr. Breunig; nor was it

27 foreseeable that failing to detain Mr. Breunig would result in the train accident.

28

1   Further, County Defendants will call Doctor Richard Clark, an expert, and a

2   board-certified medical toxicologist and emergency physician, who will testify as to

3   the Fentanyl found in Mr. Breunig, the effects of Fentanyl including signs, symptoms,

4   and behavior associated with Fentanyl use and abuse, and that Mr. Breunig was not

5   displaying any obvious signs of being under the influence of Fentanyl during his

6   interaction with Deputy Fite such that Deputy Fite would have foreseen Mr. Breunig

7   would walk away from her to cross the street, toward the train tracks, and attempt to

8   board a moving train.  Further, he will testify that Mr. Breunig's cause of death was not

9   Fentanyl and instead Mr. Breunig's cause of death was decapitation, death instant.

10  Similarly, County Defendants will call the Coroner, Dr. Chanikarn Lopez (Changsri),

11  who will testify that Mr. Breunig's cause of death was decapitation, death instant.

12  County Defendants may also call civilian witnesses, Thomas Lamar, and Juan

13  Lievanos, who will testify as to the area in which the incident occurred, as well Mr.

14  Breunig's actions after Deputy Fite ceased contact with him.  Specifically, civilian

15  witness Thomas Lamar will testify that he travels through the area often and there is

16  a trail walkway that bike riders and joggers utilize.  Mr. Lamar will also describe the

17  incident intersection as always having a cart guy selling food.  Further, Mr. Lamar

18  will testify that when he saw Mr. Breunig in that area, outside Deputy Fite's vehicle

19  walking away from her, he believed Mr. Breunig might live in the area and did not

20  believe Mr. Breunig was in danger until Mr. Breunig actually approached the train, at

21  which point, Deputy Fite had already left the scene.  County Defendants will also

22  call civilian witness Juan Lievanos, who will testify that he had been commuting

23  through the incident area for the last two to three weeks.  And, Mr. Lievanos will

24  testify that when he observed Mr. Breunig walking towards the train, he assumed Mr.

25  Breunig was walking toward homeless camps on the side of the tracks, not that Mr.

26  Breunig would attempt to board the moving train.

27  ///

28

a) **Claim 9 –** California *Civil Code* § 52.1(b) – Bane Act

b) **Elements Required for Claim 9 –** California *Civil Code* § 52.1(b) Bane Act

    1. Interference with or attempted interference with a state or federal constitutional or legal right of Decedent; and

    2. The interference or attempted interference was by threats, intimidation, or coercion.

    *See, Hernandez v. City of San Jose,* 241, F.Supp.3d 959, 968 (N.D.Cal.2017).

c) **County Defendants' Key Evidence in Opposition to Claim 9**

Plaintiff will be unable to present any evidence that there was interference or attempted interference with Decedent's rights by way of threat, intimidation, or coercion.  Further, there is no evidence of any specific intent to violate Decedent's constitutional rights.  Deputy Fite will testify that at no point to did she intentionally interfere or attempt to interfere with Mr. Breunig's civil rights, nor did she do so by threats, intimidation or coercion.  Deputy Fite will testify that she had no legal authority to arrest Mr. Breunig and had no choice but to let him leave.  County Defendants will also call Clarence Robert Chapman, who is an expert in law enforcement practices and procedures, and will testify to police practices and procedures, and who will testify that Deputy Fite's determinations and subsequent actions were reasonable.

///
///
///
///
///
///

1   **a) Claim 10 –** Violation of California's Public Records Act, California *Gov't*
2   *Code* § 6250

3   **b) Elements Required for Claim 10** – Violation of California's Public
4   Records Act, California *Gov't Code* § 6250

5   County Defendants maintain, as argued in their Motion for Summary
6   Judgment, that this Court does not have subject matter jurisdiction to determine this
7   claim. C*alhoun v. Cruz,* No. 2:20-CV-2209 DB P, 2022 WL 1527401, at *1 (E.D.
8   Cal. Apr. 26, 2022) ("To the extent plaintiff's request to the Department of State
9   Hospitals as made under California's Public Records Act ("PRA"), the remedy for
10   an alleged non-response lies in the state courts.").

11   Further, it is County Defendants' position this claim is an issue for the Court,
12   not the jury, as the exclusive remedy for challenges under the CPRA is to file a writ
13   of mandamus in state court and money damages are not an available remedy.
14   *Brooks v. Vallejo City Unified School Dist.*, 2013 WL 943460 (E.D. Cal. 2013);
15   *Hammerlord v. Filner*, 2013 WL 4046676 (S.D. Cal. 2013).  Because a jury trial is
16   not the appropriate remedy to assert a challenge under the CPRA, it should not be
17   tried to the jury and should be remanded to state court.

18   However, the elements are:

19   1.   A member of the public requested a copy of a public record that
20   reasonably described an identifiable record;

21   2.   The request was reasonable under the circumstances;

22   3.   The public agency did not make available the requested records and had
23   no reason to deny the records.

24   *See, Government Code* §6250.

25   **c) County Defendants' Key Evidence in Opposition to Claim 10**

26   Plaintiff Moller submitted two Public Records Act requests to the County for
27   which the County responded with documents and/or information.  Plaintiff Moller

28

never advised the County that she believed the responses were deficient but instead simply added a claim to this lawsuit.  County Defendants maintain this Court is not the proper venue to make a request for relief pursuant to the CPRA for the first time. *Calhoun v. Cruz, No*. 2:20-CV-2209 DB P 2022 WL 1527401, at *1 (E.D. Cal. Apr. 26, 2022).  Pursuant to California *Government Code* § 6259, the first step for Plaintiff to take if she believes the County is improperly withholding documents under the CPRA is "to appear by ***verified*** petition to the superior court of the county where the records or some part thereof are situated" and state the claim that "that certain public records are being improperly withheld from a member of the public."  Rather than following this procedure, Plaintiff Moller simply added an unverified allegation to this federal lawsuit.

To the extent Plaintiff Moller is allowed to proceed with this claim, County Defendants will call either County employee J. Price-Farnsworth or Cesia Torres to attest to the CPRA requests and complete responses from the County.

**(d) Affirmative Defenses**

    1. **First Affirmative Defense:** Defendant Fite is entitled to qualified immunity.

**(e) Elements Required:**

    1. County Defendants did not violate Plaintiff's constitutional rights or;

    2. County Defendants did not violate a clearly established constitutional right of the Plaintiff.

    *See, Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)

**(f) Key Evidence**

At the outset, "[i]n seeking to defeat a claim of qualified immunity, the ***plaintiff*** bears the burden of proving . . . that [the] elements of his claim are resolved in his favor . . ." *Brewster v. Board of Educ. of Lynwood Unified School Dist.,* 149 F.3d 971, 982 (9th Cir. 1998) (emphasis added); *see, Ault v. Speicher*, 634 F.3d 942, 945 (7th

Cir. 2011) ("'[I]n a § 1983 claim, the plaintiff bears the burden of proof on the constitution deprivation that underlies the claim . . .") Also, "[i]t is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara,* 868 F.3d 1110, 1118 (9th Cir. 2017)(internal quotation marks and citation omitted).

In order to discharge this burden, a Section 1983 plaintiff must cite ***pre-incident*** case law whose factual particulars and holdings made the illegality of the public employee's conduct "beyond debate" at the time s/he acted. *Ashcroft v. al Kidd,* 563 U.S. 731, 741 (2011); *see, City of Escondido, Cal. v. Emmons,* 139 S. Ct. 500, 504 (2019) ("existing precedent must place the lawfulness of the particular [action] beyond debate . . . ") (quoting *District of Columbia v. Wesby,* 138 S.Ct., at 581.

Given the unique circumstances presented here, there is simply no clearly established pre-incident authority that prohibited Deputy Fite from offering Breunig a courtesy ride, no clearly established case authority telling her that she was not justified in leaving the Cardinal Court address, there is no clearly established case law that prohibited Deputy Fite from pulling over to allow Mr. Breunig to use the restroom, and finally there was no clearly established case law to inform her that she was required to go after Mr. Breunig once he left the area.

As such, the relevant case law supports the Defendant Deputy's conduct, and Plaintiffs can cite to no factually analogous case that would have provided fair warning her conduct was unconstitutional, thereby warranting qualified immunity.

The same facts and testimony utilized to support that there was no violation of Plaintiff's constitutional rights as set forth above, will also be used to support the affirmative defense of qualified immunity as to Plaintiff's 42 *U.S.C.* § 1983 claims, the First, Second, Third, and Fourth Claims for Relief against Defendant Deputy Fite.

(**g) Similar statements for third parties**

Not applicable.

**(h) Identification of any anticipated evidentiary issues**

The following Motions in Limine have been filed.

1. Motion in Limine to exclude Plaintiff's expert, Dr. Hiserodt, as his opinions are irrelevant and non-scientific and should thus be excluded. *See*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), *Fed. R. Evid.* 702, and *Fed. R. Evid.* 401-403.

2. Motion in Limine to exclude Plaintiff's expert Dr. Treuting.  Dr. Treuting's report, opinions, and testimony concerning Decedent's alleged symptoms from fentanyl use and what law enforcement is required to do when an individual announces they are withdrawing from drugs should be excluded as his opinions are not based on any reliable scientific methodology and are will not assist the trier of fact. *See*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), *Fed. R. Evid.* 702, and *Fed. R. Evid.* 401-403.

3. Motion in Limine to exclude Plaintiff's police practice expert, Mr. DeFoe.  His report, opinions, and testimony concerning Decedent's unsupported speculative symptoms from fentanyl use should be excluded as his opinions are purely speculation and not based on the actual record in this case.  *See*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), *Fed. R. Evid*. 702, and *Fed. R. Evid*. 401-403.

4. Motion in Limine to exclude prior bad acts and lawsuits of Sheriff's Department employees, including prior internal affair/administrative investigations and discipline as they are irrelevant and immaterial to this suit, and are unreasonably prejudicial and inflammatory.

5. Motion in Limine to exclude images taken of Decedent at the incident scene and at autopsy as they are irrelevant and immaterial to this suit and are unreasonably prejudicial and inflammatory.

1    Co-defendants, Loma Linda University Medical Center, join in County
2  Defendants' Motion in Limine 1, 2, and 5.  All of County Defendants' Motions in
3  Limine are opposed by Plaintiffs.

4       **(i) Identification of Issues of Law and Interpretation of Statute**

5       Qualified Immunity is an issue of law to be decided by the Court.  *See, Nunez*
6  *v. Davis,* 169 F.3d 1222, 1229 (9th Cir. 2000) ("Whether a public official is entitled
7  to qualified immunity is a question of law.").

8  **II.    MOTION TO SEPARATE TRIAL INTO FOUR PHASES**
9  **(Local Rule 16-4.3)**

10      County Defendants have filed a Motion to Separate Trial into Phases which
11  expands on the reasons for this request as summarized below.  Specifically, County
12  Defendants request an order to separate trial into four phases: (1) liability and the
13  appropriateness of punitive damages, (2) damages, (3) amount of punitive damages,
14  and (4) *Monell* claim.

15      Damages are a separate issue apart from liability given the two plaintiffs in
16  this case are alleging damages that occurred due to the loss of their son and they are
17  non-percipient witnesses, therefore, the issue of damages is entirely separate and
18  apart from liability.  It would serve judicial economy as well as prevent unfair
19  prejudice to Defendants by requiring the jury to find the Defendants liable prior to
20  introduction of evidence to establish damages.  Simply put, a jury may be swayed by
21  undue sympathy for the Plaintiffs, influencing liability.  *See, e.g., Miller v. New*
22  *Jersey Transit Authority*, 160 F.R.D. 37, 41 (D.N.J. 1995) (bifurcating damages
23  "will allow the jurors to concentrate more closely on liability . . . whereas a single
24  trial would present the very real potential of clouding even a conscientious juror's
25  judgment."); *Lieberman-Sach v. Harvard Community Health Plan*, 882 F.Supp. 249,
26  257 (D.R.I 1995) (ordering bifurcation of damages sua sponte in order to minimize
27  potential unfair prejudice); *Witherbee v. Honeywell, Inc.*, 151 F.R.D. 27, 29

28

1  (N.D.N.Y 1993) ("[W]here, as here, there is evidence concerning the severity of a

2  plaintiff's injures . . . and the physical and economic impact of such injures on the

3  plaintiff, courts have found there is potential that a jury may be adversely and

4  improperly affected in considering the issues of liability fairly, impartially and

5  objectively.") *Zofcin v. Dean*, 144 F.R.D. 203, 205 (S.D.N.Y. 1992) (ordering

6  bifurcation of damages: "This Court finds that introduction of evidence offered only

7  to prove damages poses a substantial risk of impairing the jury's objectivity on the

8  liability issue in this case.").  There is no overlap between the evidence necessary

9  for the liability phase and the damages phase.

10        Separating the amount of punitive damages would serve judicial economy.

11  Deputy Fite's financial position is not relevant unless she is held liable.  Introducing

12  her financial position into the liability phase will only confuse issues and may

13  prejudice Deputy Fite.  Courts have therefore held that "[i]ssues of punitive damages

14  should normally be bifurcated from issues of liability so that proof of wealth is not

15  admitted at the trial on liability and compensatory damages.  [citations]."  *Collens v.*

16  *City of New York,* 222 F.R.D. 249, 254 (S.D.N.Y. 2004); *see generally Bates v. United*

17  *Parcel Serv.*, 204 F.R.D. 440, 448-449 (N.D. Cal. 2001) (approving bifurcation of

18  punitive damages where evidence and issues going to punitive damages was separate

19  and distinct from evidence going to liability), rev'd on other grounds at 551 F.3d 974

20  (9th Cir. 2007).  The rationale for such bifurcation rests on the fact that "[p]unitive

21  damages are to be tailored to the defendant's ability to pay, and normally that class of

22  evidence is not admitted nor desirable during the liability and compensatory damages

23  phase of the case. [citation]."  *Vosbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir.

24  1991); *see also Spears v. Anderson*, 2009 U.S. Dist. LEXIS 36792, *2 (D. Nev. 2009)

25  (bifurcating punitive damages where the court found that evidence of wealth or

26  financial status would likely confuse the issues and mislead the jury).  "Courts

27  routinely bifurcate liability and punitive damages claims in actions with claims arising

28

**COUNTY DEFENDANTS'**
**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

under 42 U.S.C. § 1983." *Motley v. City of Fresno*, 2020 WL 3642502 at *2, n.1 (E.D. Cal. July 5, 2020).

Separating *Monell* issues would serve judicial economy as municipal liability claims against the County Defendants are contingent on establishing a threshold violation of Plaintiffs' Constitutional rights, and thus need never be reached. Separating *Monell* issues would also help ensure a fair trial as introduction of *Monell* evidence regarding other law enforcement incidents would waste time and confuse the issues. *See, e.g., Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (noting that bifurcation of *Monell* promotes not only "convenience and judicial economy but also the avoidance of potential prejudice and confusion."). "Courts routinely bifurcate trials when plaintiffs assert municipal liability under *Monell*. As the Ninth Circuit explained in *Quintanilla v. City of Downey,* 84 F.3d 353, 356 (9th Cir.1996), 'bifurcation enable[s] the [C]ourt to separate the questions regarding the constitutionality of the . . . officers' actions from the questions regarding the [county's] liability under *Monell.'"* *Green v. County of Los Angeles*, 2014 WL 174988 at *1-2 (C.D. Cal. 2014); *Deats v. County of Orange*, 2010 WL 11549563 at *1 (C.D. Cal. 2010) (Court bifurcated *Monell* claim from other claims stating even if Plaintiff established liability against the individual defendants, the nominal amount of additional time required to try the *Monell* claims outweighs both the time expended and the prejudicial effect that not bifurcating the claims might cause.)

Co-defendants, Loma Linda University Medical Center, join in County Defendants' Motion to Separate Trial into Phases.

### III.   JURY TRIAL (**Local Rule 16-4.4**)

Timely requested by Plaintiffs and Defendants. Defendants maintain that Plaintiff's CPRA claim should not be tried by a jury for the reasons indicated above.

### IV.   ATTORNEYS' FEES (**Local Rule 16-4.5**)

Requested by County Defendants pursuant to 42 *U.S.C.* § 1988.

**V.    ABANDONMENT OF ISSUES (Local Rule 16-4.6)**

At this stage, no claims or affirmative defenses have been abandoned. County Defendants and co-defendants Loma Linda University Medical Center have filed Motions for Summary Judgment, which are currently under submission.

DATED:  November 20, 2023

**LYNBERG & WATKINS**
A Professional Corporation

By: _____

**SHANNON L. GUSTAFSON**
**\*AMY R. MARGOLIES**
**ANITA K. CLARKE**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO and
BREANA FITE