SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
ANITA K. CLARKE (SBN 321015)
aclarke@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants, COUNTY OF SAN BERNARDINO and BREANA FITE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH MOLLER, an individual and successor –in-interest of BRET BREUNIG, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, a public entity; BREANA FITE<br><br>Defendant. | MASTER CASE NO. 5:22-CV-01306-DSF-MAR<br><br>*Assigned for All Purposes to:*<br>*Hon. Dale S. Fischer– Courtroom 7D*<br><br>**COUNTY DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b); DECLARATION OF SHANNON L. GUSTAFSON; EXHIBITS**<br><br>*Trial Date:*       August 13, 2024 |

**1**

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As set forth in County Defendants' moving papers, the undisputed evidence firmly established that Mr. Breunig made the unforeseeable decision to attempt to board a moving train *after* being released from Deputy Fite's custody. There was nothing that transpired between Mr. Breunig and Deputy Fite that would have prompted *any* reasonable deputy to predict that Mr. Breunig would later board a moving train simply because it was there. And Plaintiff's late Opposition provides no such evidence. Instead, Plaintiff relies on flimsy claims that because Mr. Breunig said he was withdrawing, and earlier said he was hearing voices, coupled with a general belief that people *could* behave contrary to their interests when intoxicated, warrants the conclusion that the mere presence of a train down the road, rendered Mr. Breunig's harm, foreseeable. (Opp. pgs. 5-6). However, these arguments ignore the overwhelming evidence that Mr. Breunig never engaged in any conduct in Deputy Fite's presence, nor do Plaintiff's moving papers point to any such conduct, that would have informed a reasonable deputy Mr. Breunig was unaware of his actions, let alone that he would take the extreme measure of twice attempting to jumping onto a train, such that his conduct was legally foreseeable. As such, County Defendants are entitled to judgment as a matter of law on Plaintiff's Negligence theory.

## II. PLAINTIFF'S DEFINITION IS NOT THE LAW FOR A CALIFORNIA NEGLIGENCE CLAIM

Plaintiff first cites to *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) for the proposition that as long as Defendant was aware of "a danger," the foreseeability requirement has been met. First and foremost, as conceded by Plaintiff, *Wood* was a § 1983 case not a negligence case, and therefore it has no applicability whatsoever in analyzing the standard of *foreseeability* when establishing a legal duty under

California negligence law. Plaintiff's inability to cite to a single negligence case that supports her definition of foreseeability, especially after being previously advised that her § 1983 cases were not applicable,[1] speaks volumes. There are simply no California cases that stand for the proposition advocated for by Plaintiff that County Defendants somehow had a legal duty to protect against the possibility of **_any_** danger no matter how **_remote_**.

### III. THERE WAS NO FORESEEABLE DUTY TO PROTECT BREUNIG FROM THE KIND OF HARM EXPERIENCED HERE

As set forth in County Defendants' moving papers, California case law makes plain that when analyzing foreseeability for the purpose of assessing the existence of a duty, the Court's duty (not the jury's) is to evaluate "more generally whether the category of negligent conduct at issue is sufficiently likely to result in the *kind* of harm experienced that liability may be appropriately imposed on the negligent party." *Staats v. Vinter's Golf Club, LLC,* 25 Cal. App. 5th 826 (2018). Moreover, "[f]oreseeability supports a duty only to the extent that the foreseeability is reasonable." *Sturgeon v. Curnutt,* 29 Cal. App. 4th 301, 306 (1994). "Put another way, the degree of foreseeability must be high enough to charge the defendant with a duty to act." *Friedman v. Merck & Co.,* 107 Cal. App. 4th 454, 465 (2003). "**_More than a mere possibility of occurrence is required since, with hindsight, everything is foreseeable_**." *Id.*

In short, there is no California case that sets forth that a duty exists to protect against any danger at all as claimed by Plaintiff. When the appropriate California standard is applied, there is no evidence that could support a claim that the harm that

---

[1] Plaintiff's counsel was advised at the July 22, 2024, Pretrial Conference that her Memorandum of Facts and Law still improperly cited to Section 1983, even though those claims had been dismissed.

3

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**

befell Mr. Breunig was foreseeable such that Deputy Fite owed a duty to prevent it.

## III. THE UNDISPUTED EVIDENCE DOES NOT SUPPORT A DUTY HERE AS A MATTER OF LAW BECAUSE THE HARM WAS NOT FORESEEABLE

Plaintiff argues in Opposition that the harm was foreseeable because there was evidence that Deputy Fite knew that decedent was withdrawing from narcotics, that hearing voices could be a sign of drug intoxication, that a person under the influence of narcotics may behave in a certain manner, there was a train, and decedent was walking in that general direction. (Opp. pgs. 5-6). That's it.

Preliminarily, there was never any evidence admitted establishing Deputy Fite knew Mr. Breunig was in fact withdrawing from drugs or that he was actually withdrawing from drugs, only that Mr. Breunig **_said_** he was withdrawing as set forth in the testimony provided with Plaintiff's Opposition. Regardless, there was no evidence offered that a person withdrawing from narcotics would be in danger of deciding to jump onto a train as withdrawal does not result in altered consciousness. (Exhibit 1- 442:15-24).

As to drug intoxication, while Plaintiff's expert did testify that Fentanyl can cause impaired judgment, Plaintiff's expert could not, and did not, testify that Mr. Breunig was experiencing such symptoms, as there are always "exceptions to the rule." (Exhibit 2- 585:8-19). Further, there was no evidence offered that a reasonable deputy would know that Mr. Breunig was under the influence of Fentanyl, which as testified to by Plaintiff's Expert, Dr. Treuting, could cause individuals to be "somewhat nonresponsive," resulting in "shallow breathing", "respiratory arrest," "coma," and "death." (Exhibit 2- 584:7-21). Yet, this level of sedation did not present in Mr. Breunig nor was it the cause of his death here.

Instead, the evidence as set forth in Plaintiff's Opposition, was that Mr. Breunig

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**

said he was hearing voices earlier in the contact, which **_could_** be a potential sign of drug intoxication and that sometimes people under the influence of drugs **_may_** have impaired decision making and act impulsively. It simply does not follow that because Mr. Breunig might be on an unidentified drug and might act impulsively, that at the time he was released from Deputy Fite's custody, he was foreseeably in danger of jumping onto a train just simply because the train was in the general area. Nor does it follow that it was foreseeable simply because the potential sedating effects of Fentanyl, as testified to by Plaintiff's expert, Mr. Treuting, would cause somebody to jump onto a train.

The evidence presented did not support that Mr. Breunig was sedated or non-responsive, such that he would unknowingly twice attempt to jump aboard a train. Rather, from the beginning of the contact, Mr. Breunig displayed conscious decision making or at least a reasonable deputy would believe so. At the onset, Mr. Breunig was sleeping on the lawn under a tree, not out in the middle of traffic or engaging in any other dangerous behavior. (Exhibit 3-237:20-23). He knew who he was, was able to spell his name, and respond coherently to questioning by personnel and deputies at the scene at Loma Linda. (Exhibit 3- 246:6-7, 278:11-279:1) He was able to provide directions while Deputy Fite was driving and did not appear semi-conscious or any of the other symptoms that Plaintiff's expert, Dr. Treuting, testified would be expected from one under the influence of Fentanyl. (Exhibit 3-249:12-15, 278:25-279:1).

Mr. Breunig's acuity was evident as he was able to engage in a ruse when he wanted out of the car, such as claiming that the residents of the home he had directed Deputy Fite to drive to did not want the Sheriff's Department there, then claiming he had a key to the residence, and finally, claiming he needed to use the bathroom, none of which proved to be true; and a reasonable deputy would have perceived Mr. Breunig to be conscious and coherent at this time, by the sheer fact Mr. Breunig was

able to swiftly concoct these claims. (Exhibit 3- 260:23-262:11). The only thing that was clear, was that Mr. Breunig wanted to get out of the vehicle and was taking affirmative actions to accomplish that, including feigning the need to urgently defecate. Once Deputy Fite pulled over to allow him the courtesy, Mr. Breunig was able to exit the vehicle and by all accounts, **_walked away_** from Deputy Fite unassisted. (Exhibit 3- 272:24-275:4).

There was absolutely no indication that Mr. Breunig's actions were the type that would later result in him attempting to jump onto a train nor is jumping onto a train the *kind* of harm that can reasonably be foreseen as a result of Fentanyl use which, as Dr. Treuting so amply put, the risks of Fentanyl use are sedation, followed by respiratory arrest, coma, and death. (Exhibit 2- 584:7-21). Simply, Mr. Breunig's conduct was not foreseeable as a matter of law such that there was a duty here.

## IV. BECAUSE THE HARM WAS NOT FORESEEABLE, THERE WAS NO PROXIMATE CAUSE AS A MATTER OF LAW

Plaintiff incorrectly argues that foreseeability is an issue for the jury because proximate cause is generally a question of fact for the jury. (Opp. pg. 3). However, Plaintiff's argument impermissibly conflates the assessment of foreseeability when determining whether there is a legal duty to act, with, whether the harm was foreseeable such that it was the proximate cause of the injury claimed. *See, Staats v. Vinter's Golf Club, LLC,* 25 Cal. App. 5th 826, 837 (2018)( "the analysis of foreseeability for purposes of assessing the existence or scope of a duty is different, and more general, than it is for assessing whether any such duty was breached or whether a breach caused a plaintiff's injuries.").

As set forth above, and in County Defendants' moving papers, the Court must assess foreseeability in determining whether there was a legal duty to act, before the jury gets to the question of proximate cause. Only if such a legal duty exists, must

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**

there also be a determination of whether the acts of the defendant were the foreseeable proximate cause of the decedent's harm. *Ballard v. Uribe*, 41 Cal. 3d 564, 573 fn 6 1986)("the jury by contrast, considers 'foreseeability in two more focused, fact-specific settings. First, the jury may consider the likelihood or foreseeability of injury in determining whether in fact defendant's conduct was negligent in the first place. Second, foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of plaintiff's injury.").

And while Plaintiff's statement that proximate cause is typically a jury issue is an accurate one, even proximate cause can and should be removed from the jury where there is no room for dispute. *Kumaraperu v. Feldsted,* 237 Cal. App. 4th 60, 69 (2015)(Ordinarily, foreseeability [in the context of proximate cause] is a question of fact for the finder of fact, but may be decided as a question of law if under the undisputed facts there is no room for a reasonable difference of opinion.").

Here, it has essentially been Plaintiff's argument that but for dropping Mr. Breunig off near the train, he would not have been killed by the train. However, this is not sufficient to establish proximate cause. *Johnson v. Union Furniture Co.* 31 Cal. Ap. 2d 234, 237 (1939)("Care must be taken to avoid confusing two elements which are separate and distinct, namely that which causes the injury and that without which the injury would not have happened. For the former the defendant may be liable, but for the latter he may not, that is to say, in order to make a defendant liable his wrongful act must be the *cause causans* (immediate cause), and not merely the *causea sine qua non* 'necessary antecedent.'").

Thus, even if the Court finds there was a foreseeable duty and it should not, the facts of what happened between Deputy Fite and Mr. Breunig are recorded and undisputed and simply do not support a finding that she was the proximate cause of his later decisions to twice jump aboard a moving train.

## IV. DECEDENT'S ACTIONS WERE A SUPERSEDING CAUSE AS A MATTER OF LAW

Even if there was some arguable duty to protect Mr. Breunig from any harm, including potentially getting hit by a train, Plaintiff's claim would still fail as decedent's actions serve as a superseding act breaking any chain of causation. Plaintiff's do not even attempt to argue that decedent's conduct does not meet the standard of **_highly unusual_** or **_extraordinary_** because twice jumping onto a moving train is clearly just that. Rather, Plaintiff simply argues in opposition that this defense can **_never_** be applied here because County Defendant has not set forth a citable case, outside of the suicide context, where an individual can be the superseding cause of their own injuries. Not so.

Ironically, Plaintiff has made this same argument time and again, without herself ever citing a case to support Plaintiff's position that a person can **_never_** be the superseding cause of their own injuries. Plainly, there is no such case, because it is well settled, as Plaintiff concedes, that a decedent can be the superseding cause of their own death in a suicide context. *Tate v. Canonica*, 180 Cal. App. 2d 898, 901-903 ("In California, suicide has historically been viewed as an intervening event that always breaks the chain of causation, thereby precluding any tort liability for a suicide."); *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 351 (Cal. 1976) (same). Plaintiff has never cited any rationale as to why a decedent who caused his own death by "accident" is any different than the suicide line of cases where the decedent caused his own death "intentionally." For example, in the line of suicide cases, family members sued for wrongful death and their claims were dismissed, because the decedent's own conduct was a superseding cause of the death for which they sought damages. Similarly, Mr. Breunig's conduct in twice jumping onto a train, was a superseding cause of his death for which Plaintiff Ms. Moller seeks damages. The

fact that Mr. Breunig chose to take drugs, as argued by Plaintiff, does not negate his responsibility under California law. *See CACI* 404 Intoxication ("people who take drugs must act just as carefully as those who do not.").

Moreover, contrary to Plaintiff's baseless claim, there is a **_citable_** case outside the suicide context wherein a Plaintiff's own conduct was analyzed under the superseding cause standard for her own injuries. *See e.g. Kahn v. East Side Union High School District* (2003) 31 Cal.4th 990, 1017 (analyzing whether Plaintiff's actions were foreseeable to determine whether she was an intervening cause of her injuries). Likewise, unpublished cases in California have addressed this issue and confirmed Plaintiff can serve as a superseding cause to their own injuries. *Benson v. Evans Airport Service, Inc.*, 2022 WL 1637234, at *1 (Cal. 2022) (unpublished)("undisputed material facts establish that Plaintiff's own conduct was an intervening, superseding cause of the only injury claimed by Plaintiff."); *Bernal v. Carson*, 2021 WL 2560240, *1 (Cal. 4d 2021) (unpublished)(overruling Plaintiff's argument that he could not be the superseding cause of his own injury because he was not a third party).

And for good reason. It makes little sense to argue that if somebody commits suicide, their actions can be a superseding cause and also if somebody engages in conduct whereby, they are injured short of death, their actions can serve as a superseding cause, but that if a person engages in a non-suicidal action that causes death, the superseding cause defense no longer applies; and, plaintiff has cited no such case.

What matters is whether the elements of the defense have been met—the individual engaged in highly unusual or extraordinary conduct after the conduct of defendant, and that the kind of harm resulting from the conduct was different than the kind of harm that could reasonably be expected from defendant's conduct. *See CACI*

9

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**

432; *Ash v. North American Title Co.* 223 Cal. AP. 4th 1258, 1274 (Cal. 2014). Mr. Breunig's decision to jump aboard a moving train was highly unusual, it happened after Deputy Fite was no longer there, and it was not the type of harm that could have been reasonably anticipated under the facts presented here.

## V. CONCLUSION

For all the foregoing reasons, County Defendants respectfully request that their Renewed Motion for Judgment as a Matter of Law be granted pursuant to Rule 50(b).

DATED: October 23, 2024

**LYNBERG & WATKINS**
A Professional Corporation

By: */s/ Shannon L. Gustafson*
SHANNON L. GUSTAFSON
AMY R. MARGOLIES
ANITA K. CLARKE
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO and BREANA FITE

# DECLARATION OF SHANNON L. GUSTAFSON

I, Shannon L. Gustafson, declare as follows:

1. I am an attorney at law duly authorized to practice before this Court and am a shareholder with Lynberg & Watkins, attorneys for County Defendants' (Defendant Deputy Breana Fite and County of San Bernardino) in this action. I have personal knowledge of the facts stated herein, except those stated upon information and belief, and as to those matters, I believe them to be true. If called upon to testify to the matters herein, I could and would competently do so.

2. Exhibit 1 is a true and correct copy of the relevant portions of Dr. Clark's trial testimony from August 15, 2024.

3. Exhibit 2 is a true and correct copy of the relevant portions of Dr. Treuting's trial testimony from August 16, 2024.

4. Exhibit 3 is a true and correct copy of the relevant portions of Breanna Fite's testimony from August 14, 2024.

I declare under penalty of perjury under the laws of the United States of America that the above statement is true and correct. Executed this 23rd day of October 2024, in Orange, California.

*/s/ Shannon L. Gustafson*
**DECLARANT**
**SHANNON L. GUSTAFSON**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for COUNTY DEFENDANTS, certifies that this brief contains 2,690 words, which:

☐ complies with the word limit of L.R. 11-6.1.

X complies with the word limit set by court order dated _____.

DATED: October 23, 2024			**LYNBERG & WATKINS**
							A Professional Corporation


							By: */s/ Shannon L. Gustafson*
							SHANNON L. GUSTAFSON
							AMY R. MARGOLIES
							ANITA K. CLARKE
							Attorneys for Defendant,
							COUNTY OF SAN BERNARDINO and BREANA FITE