# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH MOLLER, an individual and successor-in-interest of BRET BREUNIG, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, et al.,<br><br>Defendants. | No. 5:22-cv-01306-DSF-MAR<br><br>Order GRANTING Defendants County of San Bernardino and Breana Fite's Renewed Motion for Judgment as a Matter of Law (Dkt. 336) |

    Defendants County of San Bernardino and Breana Fite move for judgment as a matter of law. Dkt. 336 (Mot.). Plaintiff Deborah Moller opposes. Dkt. 344 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED.

## I. Background

    On August 18, 2021, San Bernardino County Deputy Sheriff Breana Fite received a call for service regarding a person who was refusing to leave Loma Linda University Medical Center (LLUMC) property. Dkt. 323 (Aug. 13, 2024 Reporter's Transcript (RT)) at 150:21-151:1. When Fite arrived on the scene she encountered Bret Breunig. Breunig provided information about himself, including his name and date of birth, Dkt. 325 (Aug. 14, 2024 RT) at 243:3-244:10,

and that he had been discharged from the hospital, Aug. 13, 2024 RT at 172:25. When asked if he needed medical assistance, Breunig responded: "I hear voices." Id. at 166:24-167:1. Breunig did not repeat this statement at any other time during his interaction with Fite, and Fite did not observe Breunig display any behavior that "confirmed for [her] that Breunig was hearing voices" or that he "was going to harm himself[.]" Aug. 14, 2024 RT at 244:25-245:21.

At Breunig's request, Fite agreed to give Breunig a courtesy ride home. Aug. 13, 2024 RT at 174:12-15. Breunig provided Fite with turn-by-turn directions to his intended location, a house on Cardinal Court where Breunig said he was staying with a friend. Aug. 14, 2024 RT at 258:13-25. Fite did not immediately let Breunig out of her patrol vehicle when they arrived at the house. Id. at 259:24-260:3. Instead, Fite first attempted to verify that Breunig actually knew someone who lived at the house, because over the course of their interaction Breunig had identified several different residence locations and also had said he was homeless. Id. at 259:24-260:8. Fite was unable to verify that Breunig lived at the house, and Breunig did not have a key to the house, so Fite told him that she would not leave him at that location, but would instead take him to a nearby hospital. Id. at 262:15-263:1. Breunig repeatedly stated that he did not want to return to a hospital, threatened to defecate in Fite's vehicle, and asked Fite to let him out of the vehicle. Id. at 267:9-271:22. Fite eventually pulled over to the side of the road and let Breunig out of the passenger side of the vehicle. Id. at 272:12-273:10. Breunig walked past Fite toward the front of the car, and crossed to the other side of the road. Id. at 273:17-274:13. Fite got back into her vehicle, made a U-turn, and left the location. Id. at 278:18-21. Breunig walked toward a passing train, twice attempted to board the moving train, and was killed when he fell and was pulled under the train. Id. at 292:2-293:15; 299:25-300:6. An autopsy showed that Breunig had fentanyl and norfentanyl in his blood. Dkt. 329 (Aug. 16, 2024 RT) at 582:24-583:4.

Breunig's mother, Deborah Moller, brought this action against the County and Fite, asserting multiple claims related to her son's

2

death.[1]  The Court granted summary judgment as to all of Moller's claims except the negligence claim.  See Dkt. 176 (MSJ Ord.).  Trial began on Moller's negligence claim on August 13, 2024.  Dkt. 265.  On August 16, 2024, Defendants timely filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  Dkt. 269.  The Court took that motion under submission and submitted the case to the jury.  On August 20, 2024, the jury was discharged without having reached a verdict, and the Court declared a mistrial.  Dkt. 273.  On September 17, 2024, Defendants timely filed this renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).

## II. Legal Standard

Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law (JMOL) after the close of evidence but before the case is submitted to a jury.  Dupree v. Younger, 598 U.S. 729, 731 (2023).   If the motion is not granted, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b).  Federal Rule of Civil Procedure 50(b) permits a party to file a renewed JMOL motion that addresses a jury issue not decided by verdict no later than 28 days after the jury was discharged.  Id.

The Rule 50 "standard largely 'mirrors' the summary-judgment standard, the difference being that district courts evaluate [JMOL] motions in light of the trial record rather than the discovery record."  Dupree, 598 U.S. at 731-32.  In ruling on a JMOL motion, the Court

---

[1] All references to "Defendants" in this order refer only to Defendants County of San Bernardino and Deputy Breana Fite.  Although Moller also brought claims against Loma Linda University Medical Center, the Court ordered that those claims be tried separately from Moller's claims against the County and Fite.  Dkt. 203.  On November 15, 2024, with the consent of the parties and pursuant to the joint stipulation of the parties (Dkt. 355), the Court entered judgment in favor of LLUMC only, and dismissed with prejudice all claims against LLUMC.  See Dkt. 356.

"view[s] all evidence in the light most favorable to the nonmoving party, draw[s] all reasonable inferences in favor of the non-mover, and disregard[s] all evidence favorable to the moving party that the jury is not required to believe." Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110, 1115 (9th Cir. 2017).  The Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000).  "Nevertheless, a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence." Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir. 2009) (cleaned up).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The Court may grant a motion for judgment as matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue, that is, if, under the governing law, there can be but one reasonable conclusion as to the verdict[.]" Shafer, 868 F.3d at 1115 (cleaned up).  "Conversely, '[i]f reasonable minds could differ as to the import of the evidence,' the motion should be denied." Id. (quoting Anderson, 477 U.S. at 250-51).

### III. Discussion

Defendants argue that a reasonable jury would not have a legally sufficient evidentiary basis to find for Moller on her negligence claim because it was unforeseeable that Breunig would attempt to climb aboard a moving train.  The parties argue the issue of foreseeability with respect to (1) the existence and scope of a duty; and (2) causation.

### A.   Duty

The existence of a legal duty to use due care is an essential element of Moller's negligence claim. Modisette v. Apple Inc., 30 Cal. App. 5th 136, 143 (2018).  "The existence of a duty of care is a question of law to be determined by the court alone." Hernandez v. KWPH Enterprises, 116 Cal. App. 4th 170, 176 (2004).  "This is because legal

4

duties are merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." Id. (cleaned up).

California recognizes a "general duty to exercise due care for the safety of others [that] is broad," but is not without limits. Golick v. State of California, 82 Cal. App. 5th 1127, 1143 (2022), review denied (Nov. 30, 2022). The general duty of care applies only "when it is the defendant who has created a risk of harm to the plaintiff, including when the defendant is responsible for making the plaintiff's position worse." Id. at 1143-44 (quoting Brown v. USA Taekwondo, 11 Cal. 5th 204, 215 (2021)) (cleaned up). "[A]s a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." Id. at 1138 (quoting Tarasoff v. Regents of University of California,17 Cal. 3d 425, 434-35 (1976)) (cleaned up). However, the law does not recognize a general duty to protect another from a risk of harm that the defendant did not create. Id. at 1144. The no-duty-to-protect rule applies equally to law enforcement officers. Id.

Moller argues that "Fite had reason to believe, at the time she abandoned [Breunig] that [he] was a danger to himself such that he could have been injured[,]" making "the risk of [Breunig] being hit by the train . . . foreseeable." Opp'n at 4-5.[2] As the Court explained in its order on Defendants' motion for summary judgment, it is undisputed that Breunig "voluntarily walked away from Fite and took the affirmative action to put himself in the way of the train[,]" leaving Fite with the choice either to detain Breunig or allow him to leave.[3] See

---

[2] The Court generally disagrees with Moller's understanding of foreseeability, as discussed in the Court's analysis of causation, infra.

[3] Although the evidence at trial included "dueling expert opinions" regarding whether a reasonable officer should have inquired further into Breunig's mental state and potential substance use, should have known Breunig may have been mentally ill or under the influence, or should have delivered him to appropriate medical care, those opinions "address only the question whether a standard of care was breached. They do not define the extent of any legal duty owed to [Breunig] by [Fite]." Hernandez, 116 Cal. App. 4th at 176.

5

MSJ Ord. at 7-8. The general duty of law enforcement officers to perform their functions with due care then is not at issue in this case. Essentially, Moller contends that because the harm Breunig suffered was foreseeable, the law imposed on Fite a duty to "take positive steps to protect [Breunig] from [him]self." Hernandez, 116 Cal. App. 4th at 177. "Such a proposed duty has been labeled variously, in other similar situations, as a 'duty to prevent harm,' a 'duty to come to the aid of another,' and a 'duty to take precautions' against a person's harming himself or herself in some foreseeable way." Id. (cleaned up).[4]

But California law does not recognize a general duty to "protect another from a peril that the defendant did not create" unless there is "a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." Golick, 82 Cal. App. 5th at 1144 (quoting Brown, 11 Cal. 5th at 209); accord Hernandez, 116 Cal. App. 4th at 180 (holding that emergency medical technicians had no legal duty "to protect [their voluntary charge] from her own suicidal, reckless or irrational subsequent conduct").

Hernandez is instructive. There a deputy sheriff, responding to a call from worried family members, encountered Mr. and Mrs. Hernandez walking down a street. Hernandez, 116 Cal. App. 4th at 172-73. The deputy evaluated Mrs. Hernandez's mental status and decided not to detain her pursuant to Welfare and Institutions Code section 5150. Id. at 173.[5] At the request of Mrs. Hernandez, the

---

[4] The Court describes Breunig's attempt to board a moving train as an act of self-harm in the most general sense—as a volitional act by a person that results in harm to that person. Neither side presented any evidence suggesting that Breunig acted with an intent to commit suicide or otherwise cause harm to himself.

[5] Section 5150 provides that "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled," certain persons, including peace officers, "may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment" in a designated facility. Cal. Welf. & Inst. Code § 5150(a).

6

deputy summoned an ambulance to take Mr. and Mrs. Hernandez to a hospital for voluntary treatment. Id. When they reached the hospital and the emergency medical technician (EMT) opened the door of the ambulance, Mrs. Hernandez "dash[ed] away" and "proceeded on foot away from the hospital doors, across the grounds, onto a local roadway, and then onto Highway 99." Id. at 174. The EMTs did not try to stop Mrs. Hernandez. Id. "Instead, they went inside the hospital to inform personnel what had occurred" and then returned to the ambulance to drive back to their station. Id. Mrs. Hernandez walked "across one side of Highway 99, over the median barrier, and out into the roadway on the other side." Id. She then "attempted to flag down one vehicle, without success, and was then hit and killed by another." Id.

The appellate court rejected the plaintiff's broad proposition that "when those who accept the responsibility of caring for others learn that their charges may pose a danger to themselves, they owe a duty of reasonable care to prevent such harm." Id. at 178. Even if the EMTs could have restrained Mrs. Hernandez to prevent her from leaving their care before she was delivered to the appropriate medical staff at the hospital pursuant to the policies and procedures of their employer, it does not follow that "they necessarily had a legal duty to do so." Id. at 177. Because there were no facts suggesting that the EMTs made any promises inducing reliance or that they undertook acts that increased the risk of harm, the plaintiff had failed to show a special relationship giving rise to a duty to protect Mrs. Hernandez from the harm she suffered. Id. at 178-80. Affirming summary judgment for the defendants, the appellate court explained that, absent a special relationship, the EMTs' decision "to transport Mrs. Hernandez to a hospital, at her request," did not impose on the EMTs a legal duty "to protect [Mrs. Hernandez] from her own suicidal, reckless or irrational subsequent conduct." Id. at 180.

Here, as in Hernandez, Fite's decision to provide Breunig with a courtesy ride, at his request, did not impose on her a legal duty to protect Breunig from his own reckless subsequent conduct absent a special relationship or some other set of circumstances that would give

7

rise to an affirmative duty to protect. This is true even if Fite knew, or should have known, that Breunig might pose a danger to himself.

Moller argues that Fite "intensif[ied] the risk of harm" to Breunig by moving him "to a location without sidewalks, and directly adjacent to a moving train . . . ." Opp'n at 5. Although a duty to protect can arise when a person's failure to exercise due care increases the risk of harm to another, "a valid claim under [a] theory of increased risk of harm" requires that the defendant's acts increased the risk that the plaintiff would suffer the harm alleged. See Golick, 82 Cal. App. 5th at 1146. But "[o]ther than making it more probable that [Breunig] would be in the place in which the accident happened, [Fite's conduct] did not make more probable the accident that occurred, which was the result of [Breunig's] independent" decision to attempt to board a moving train. Bryant v. Glastetter, 32 Cal. App. 4th 770, 780 (1995) (driver who was arrested for driving under the influence had no duty to tow truck operator to prevent the harm suffered when he was struck by another vehicle while working to remove defendant's abandoned vehicle).

Without presenting "facts—not mere conclusions, as [counsel] have here—establishing that [Fite's] acts increased the risk" that Breunig would recklessly place himself in harm's way, Moller cannot show a special relationship giving rise to a duty to protect based on a theory of increased risk of harm. Golick, 82 Cal. App. 5th at 1146. Moller advances no other arguments on the issue of legal duty, and it is not the role of the Court to make parties' arguments for them. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003).

The Court concludes that Fite owed no duty of care to Breunig with respect to his attempt to climb aboard a moving train.

### B. Causation

Moller also must prove that the allegedly negligent conduct was "the proximate or legal cause of the resulting injury." Novak v. Cont'l Tire N. Am., 22 Cal. App. 5th 189, 195 (2018). The proximate cause analysis considers "whether there is a sufficient connection between the risks created by [a defendant's] conduct and the injury [a plaintiff]

8

suffered to hold [the] defendant[ ] responsible." Id. at 196. "Because the purported factual causes of an event may be traced back to the dawn of humanity, the law has imposed additional limitations on liability other than simple causality." Id. (cleaned up). Proximate cause "relate[s] not only to the degree of connection between the conduct and the injury, but also with public policy" and so an analysis of proximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." Id. The doctrine of proximate cause thus limits liability such that "in certain situations where the defendant's conduct is an actual cause of the harm, the defendant will nevertheless be absolved because of the manner in which the injury occurred . . . ." Id.

Foreseeability of harm is one policy consideration with which the doctrine of proximate cause is concerned. Id. A defendant's conduct may not be "a legal cause of harm to another where . . . it appears to the court highly extraordinary that [the defendant's conduct] should have brought about the harm." Id. at 197. Liability can attach only where "there [is] some reasonable connection between the original negligence and its consequences, between the harm threatened and the harm done." Id. Although causation is ordinarily a question for the trier of fact, "where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." Id. (quoting State Dep't of State Hosps. v. Superior Ct., 61 Cal. 4th 339, 353 (2015)).

Moller argues that the question of proximate cause "is not whether the defendant did foresee, or by the exercise of ordinary care should have foreseen, the identical consequence that happened," but rather "whether it was reasonably foreseeable that injury or damage would likely occur." Opp'n at 3. According to Moller, "once it is reasonably foreseeable that *some* injury could occur, the 'foreseeability' standard is met." Id. As support for this proposition, Moller primarily relies on Wood v. Ostrander, which she contends "deals specifically with the issue of foreseeability . . . ." Id. at 3-4. Moller's discussion of Wood, a § 1983 case, is seriously flawed.

9

In Wood, a state trooper stopped a car around 2:30 a.m., arrested the driver, impounded the car, and left the plaintiff passenger stranded on the side of the road in a high crime area where she was later raped. Wood v. Ostrander, 879 F.2d 583, 590 (9th Cir. 1989). As an initial matter, Wood did not consider whether the defendant trooper was negligent, because "mere negligence" does not state a claim under § 1983 and, in any event, the plaintiff raised genuine issues of fact tending to show that the trooper acted with deliberate indifference for the plaintiff's safety. Id. at 587-88. Moller contends that the analysis in Wood demonstrates that "so long as the Defendant was aware of a danger, perhaps of being robbed or hit by a car, the foreseeability requirement is met even if the exact danger which did befall the Plaintiff (there, rape) was not specifically contemplated." Opp'n at 4. But not only was there no "foreseeability requirement" at issue in Wood, the circuit nowhere suggested that awareness of *any* danger somehow makes *all* dangers foreseeable. Moreover, Wood is inapplicable here, because there the circuit explicitly stated that it was not examining issues of proximate cause. See Wood, 879 F.2d at 586 n.2. And finally, as the Court has previously explained, "[w]hatever the merits of the decision[ ] in [Wood], the differences [in the facts of that] case[ ] and [this] case . . . leap from the page." MSJ Ord. at 8.

Moller's incredibly broad definition of proximate cause would hold a person whose conduct creates *any* foreseeable risk of harm liable for all subsequent injuries, regardless of how unforeseeable or remote the connection may be between the original harm threatened and the harm done. This is precisely the type of expansive liability that the doctrine of proximate cause exists to limit as a matter of policy. See Novak, 22 Cal. App. 5th at 196-97 (explaining "concepts of duty and proximate cause are each expressions of public policy and courts have taken varying approaches in using one or the other concept to limit liability"). "Proximate cause rules apply in individual cases and take into account the particular context in which any act or injury occurred" and operate to foreclose liability unless there is "some reasonable connection between the original negligence and its consequences, between the harm threatened and the harm done." Id. (cleaned up).

10

Moller claims it was foreseeable that Breunig would be hit by a train because "Fite was aware that [Breunig] was on drugs, and exhibiting troubling symptoms such as hallucinations, delusions, and confusion." Opp'n at 5. Even viewing the evidence in the light most favorable to Moller, this statement exaggerates the record beyond any inference that the evidence could reasonably support.

Moller points to evidence that Breunig told Fite he was "going through withdrawals." Aug. 13, 2024 RT at 198:25-199:4.[6] This statement could indicate that Breunig had a recent history of substance abuse, from which Fite could have suspected that he was under the influence of narcotics at the time. But that does not support the proposition that Fite knew or should have known that Breunig was so severely impaired by substances that there was a foreseeable risk he would attempt to climb aboard a moving train. As further support, Moller points to evidence that Breunig told Fite he was hearing voices and to testimony by Fite that hearing voices could be a sign of narcotics intoxication.[7] Aug. 13, 2024 RT at 167:10-22. Moller also points to toxicology results establishing that Breunig "was under the influence of toxic levels of fentanyl during the entire incident." Opp'n at 5. But those post-mortem test results were obviously not among the information known to Fite at the time of the alleged negligence. Moller does not point to any evidence suggesting that Breunig was exhibiting observable signs of impairment.

Uncontroverted trial testimony established that when Fite and Deputy Nicholas Vaca encountered Breunig outside of LLUMC, he did not appear to have any trouble identifying himself or answering questions. Aug. 14, 2024 RT at 243:3-244:10; Dkt. 327 (Aug. 15, 2024 RT) at 488:10-22.[8] And uncontroverted testimony demonstrated that

---

[6] This testimony from Fite is corroborated by her Belt Recording Audio (Exhibit 202).

[7] Fite also testified that hearing voices could instead be a sign of mental illness. Aug. 13, 2024 RT at 167:10-22.

[8] This testimony from Fite and Vaca is corroborated by Exhibit 202.

11

Breunig was able to provide Fite with clear turn-by-turn directions to his intended location. Aug. 14, 2024 RT at 258:13-25.[9] Aside from his initial statement, Breunig did not mention hearing voices at any other time during his interaction with Fite, and Fite testified that she did not observe Breunig display any behaviors that "confirmed for [her] that Breunig was hearing voices" or that he "was going to harm himself[.]" Id. at 244:25-245:21. The audio recording from Fite's belt recorder (Exhibit 202) corroborates this testimony.

Even viewed in the light most favorable to Moller, these facts do not support a reasonable inference that Fite knew, or should have known, that Breunig was a danger to himself and might do anything as reckless as attempting to board a moving train. The only reasonable conclusion is that Breunig's death was not a foreseeable risk of Fite's conduct. The Court finds no legally sufficient evidentiary basis on which a jury could find for Moller on the issue of proximate cause.

Defendants also argue that they cannot be liable because Breunig's conduct in twice attempting to climb aboard a moving train was a superseding cause of his death. Reply at 8. Superseding cause is an affirmative defense that "absolves [the original] tortfeasor, even though his conduct was a substantial contributing factor, when an independent event [subsequently] intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible." Chanda v. Fed. Home Loans Corp., 215 Cal. App. 4th 746, 755 (2013) (quoting Soule v. General Motors Corp., 8 Cal.4th 548, 573 n.9 (1994)) (alteration in original).

The only argument Moller advances on the issue of superseding cause is that Breunig's conduct cannot "constitute a [superseding] cause of his death" because a superseding cause "is one originating with a 'third party'" and Breunig "cannot be reasonably considered to be a third party to his own injury." Opp'n at 6. Moller is wrong. Although courts often discuss superseding cause in terms of third-party conduct,

---

[9] This testimony from Fite is corroborated by Exhibit 202.

the law does not require a superseding cause to be the act of a third party. See Brewer v. Teano, 40 Cal. App. 4th 1024, 1031 (1995) (describing "[a] superseding cause [as] an act of a third person *or other force*") (emphasis added). A person's own conduct can be the superseding cause of harm to that person. See also Kahn v. E. Side Union High Sch. Dist., 31 Cal. 4th 990, 1016 (2003) (denying summary judgment in part because there remained issues of material fact as to whether plaintiff's own conduct was a superseding cause of her injury).

Although superseding cause is often a question of fact, "like proximate cause generally, it is a matter of law where only one reasonable conclusion may be reached." Brewer, 40 Cal. App. 4th at 1035. The only reasonable conclusion that can be reached here is that Breunig's conduct was the superseding cause of the harm because his attempt to board a moving train "was an independent event [that subsequently] intervene[d] in the chain of causation, producing harm of a kind and degree so far beyond the risk [Fite] should have foreseen that the law deems it unfair to hold" the Defendants responsible for his death. Chanda, 215 Cal. App. 4th at 755.

### IV. Conclusion

Defendants County of San Bernardino and Breana Fite's Motion for Judgment as a Matter of Law is GRANTED. Judgment will be entered for the Defendants.

IT IS SO ORDERED.

Date: November 25, 2024

_____
Dale S. Fischer
United States District Judge